473

UNITED STATES of America

v.

Joshua EILBERG

Civ. A. No. 79–1623.

United States District Court,
E. D. Pennsylvania.

June 25, 1980.

See also, D.C., 507 F.Supp. 267.

Gary Tilles, Antionette R. Stone, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Thomas B. Rutter, Philadelphia, Pa., for intervenors.

John Rogers Carroll, Philadelphia, Pa., for defendant.

## MEMORANDUM

POLLAK, District Judge.

In this civil action, the United States sues for sums owed by former Representative Joshua Eilberg, so the United States contends, by reason of his activities on behalf of a client of his then law firm performed during the time in which Mr. Eilberg was a Congressman. Specifically, the United States seeks: (1) Mr. Eilberg's distributive share of the fee paid to Mr. Eilberg's firm by Hahnemann Hospital for the firm's representation in aid of securing a grant from a federal agency—a representation which, by virtue of the federal governmental ingredient, was not one in which a Congressman could lawfully participate; and (2) double the telephone toll billings charged to the United States for calls falsely certified by Mr. Eilberg as official, plus civil penalties.

Addressing the first of the two claims made by the United States, Mr. Eilberg's former law partners, Lawrence Corson and Allan Getson, have moved to intervene. They contend that if Mr. Eilberg is not entitled to retain his distributive share of the firm's fee, that share belongs to them rather than to the United States. Since Messrs. Corson and Getson are now suing Mr. Eilberg in an action in the Court of Common Pleas—an action involving this fee among other partnership accounts which are in dispute—they are concerned that a disposition by this court favorable to the United States may militate against their opportunity to prevail in the state court action.

Federal Rule of Civil Procedure § 24(a)(2) provides for intervention as of right:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ Here, the existing parties clearly will not adequately represent the interests of Messrs. Corson and Getson. But the United States asserts that Messrs. Corson and Getson cannot meet the other two requirements of the Rule: (1) that the would-be intervenors have an interest relating to the subject of the action; and (2) that their absence from the suit would, as a practical matter, impair their ability to protect that interest.

■ In support of its first contention, the United States argues that Messrs. Corson and Getson have no interest in the property that is the subject of this suit, but only, at best, an interest in the contractual arrangement that existed among the firm partners. But this argument elevates form over substance. The interest requirement of amended Rule 24(a)(2) is a practical guide designed to dispose of lawsuits "by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967). The rule does not require that the petitioner claim an interest in the property that is the subject of the suit, but only an interest "relating to" that property. And, in any event, inasmuch as Messrs. Corson and Getson claim as theirs the very distributive share for which the United States sues, they are claiming an interest not only "relating to," but *in*, the property that is the subject of the suit, no matter whether their claim sounds in contracts or tort, law or equity.

■ The more serious contention advanced by the United States is that disposition of this action will not impair petitioners' ability to protect their asserted interest within the meaning of the Rule. The argument is that since Messrs. Corson and Getson wish to intervene only in aid of a claim that is being actively pursued in the Court of Common Pleas, they will not be bound, even by principles of *stare decisis*, by whatever disposition is made of the claim pressed by the United States in this court. But this argument does not settle the matter of practical impairment that might result to Messrs. Corson and Getson if the United States should prove successful here. The United States, on one theory which it has advanced, is seeking to have a constructive trust imposed upon Mr. Eilberg's distributive share. It would be inappropriate at this stage of the litigation to venture a confident prophecy as to the viability of the legal theory urged by the United States; nonetheless, it may properly be said that if Messrs. Corson and Getson have a legal entitlement to Mr. Eilberg's distributive share, this may well militate against the entitlement of the United States to the equitable relief that it seeks.[1] Thus, the

---

1. See, e. g., *United States v. Carter*, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910), which suggests that the entitlement of the United States to have a constructive trust imposed rests on a theory of unjust enrichment—an enrichment which, it would appear, would not exist if Messrs. Corson and Getson can establish a legal right to Mr. Eilberg's distributive share:

relief sought by the United States may be inconsistent, substantially or entirely, with that sought by Messrs. Corson and Getson: Were the United States to succeed on its theory of constructive trust, in the absence of Messrs. Corson and Getson, and were the latter to succeed on their claim of entitlement against Mr. Eilberg in the Court of Common Pleas, then Messrs. Corson and Getson would be put to the significant practical disadvantage of attempting in further litigation either to (1) force Mr. Eilberg to disgorge a sum equal to that already ordered to be paid to the United States, or (2) recoup the distributive share from the United States. This kind of practical disadvantage falls within the terms of Rule 24(a)(2). As the Advisory Committee Note to the 1966 Amendment states:

> If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.

39 F.R.D. 109. See also *Note: Intervention in Government Enforcement Actions*, 89 Harv.L.Rev. 1174, 1183–84 (1976). Nothing in the Rule, or in this Committee Note, suggests that the impairment or impediment contemplated by 24(a)(2) was limited to that imposed by principles of *stare decisis*.[2] What is clear is that the amendment was designed to remove the *res judicata* limitation that had been imposed by judicial decision under the Rule in its earlier form. 39 F.R.D. 110. It would do a disservice to the spirit behind the amendment if the rigidities of *res judicata* were simply to be replaced by the strictures of *stare decisis*. There is, of course, a danger that in freeing the Rule from such constraints, the doors of the federal courts may be thrown open to attempts to circumvent diversity requirements through 24(a)(2) intervention. But that danger should be met on a case-by-case basis, not by judicial promulgation of an

other narrow rule. See Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv.L.Rev. 721, 757–64 (1968).

Accordingly, in an order filed today, I grant the motion to intervene.

---

> [P]ublic justice will not tolerate that a public official shall retain any profit or advantage which he may realize through the acquisition of an interest in conflict with his fidelity as an agent.
>
> *Id.* 306, 30 S.Ct. at 520.

**2.** The cases holding that *stare decisis* may supply the practical disadvantage necessary under 24(a)(2) do not imply that other considerations may not suffice in the absence of *stare decisis*. See *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir.1967); *Atlantis Development Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967).