30 A.3d 984

**TYDINGS & ROSENBERG, LLP**

v.

**John ZORZIT.**

**No. 145, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 25, 2011.

Glenn E. Bushel (Ann M. Grillo, and Gregory M. Garrett of Tydings & Rosenberg LLP, Baltimore, MD), on brief, for appellant.

Cynthia E. Young, Annapolis, MD (Richard B. Jacobs and Ilene B. Glickman of Hooper & Jacobs, LLC, Towson, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

While the case at bar was pending in the Court of Special Appeals, this Court issued a writ of certiorari to address the issue of whether a law firm has a right to intervene in a domestic relations case in order to recover counsel fees that it has earned while representing the "nonmonied" spouse. *Tydings & Rosenberg v. Zorzit,* 418 Md. 397, 15 A.3d 298 (2011). For the reasons that follow, we hold that because the Circuit Court is authorized by § 7–107(f) of the Family Law Article to enter a judgment in favor of the law firm, Md. Rule 2–214(a)(2) provides the law firm with the right to intervene.

## Background

In the Circuit Court for Baltimore County, on August 19, 2010, Tydings & Rosenberg, LLP, Appellant,[1] filed a MOTION TO INTERVENE in the case of Julie Zorzit, *Plaintiff,* v. John Zorzit, *Defendant* (Appellee). Appellant's motion included the following assertions:

> Pursuant to Maryland Rule 2–214, Tydings & Rosenberg LLP hereby moves to intervene in the captioned action. As more fully appears herein, Tydings & Rosenberg LLP (T & R) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that the disposition of the action may as a practical matter impair or impede that interest, which is not adequately represented by existing parties. T & R asks this Court to invoke Maryland Code, Family Law Art., § 7–107(f), and order

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Because no prior appellate decision has been rendered in the case at bar, the designation of the parties is controlled by Md. Rule 8–111(a)(1).

that "any amount awarded for counsel fees be *paid directly to the lawyer*" and "*enter judgment in favor of the lawyer.*"

\* \* \*

2. On February 3, 2009, T & R, on behalf of Plaintiff, instituted this action by filing a Complaint for Absolute and Limited Divorce and *Pendente Lite* and Other Relief against Defendant John Zorzit, seeking an order granting absolute and limited divorce, a monetary award, *pendente lite* and permanent alimony and child support, custody, attorney's fees, suit money, and litigation costs. These prayers were reasserted in a later filed Amended Complaint. In the normal course of events, the claims for attorney's fees and litigation costs would be adjudicated as part of the overall action.

3. The Family Law Article empowers the Court to order that "any amount awarded for counsel fees be *paid directly to the lawyer,*" and the Court may "*enter judgment in favor of the lawyer.*" See Maryland Code, Family Law Art., §§ 7–107(f)(divorce) (emphasis supplied), 8–214(f)(monetary award), 11110(f) (alimony). T & R seeks this Court to award counsel fees to be paid directly to it as the lawyer for Julie Zorzit, and to enter judgments for same in its favor, and against John Zorzit, with costs. The Court of Special Appeals has endorsed the invocation of these statutes "irrespective of whether a fee agreement exists between the client and attorney," even where a party was not obligated to pay counsel. *Henriquez v. Henriquez,* 185 Md.App. 465, 486 [971 A.2d 345] (2009).

\* \* \*

9. On August 4, 2010, counsel for Plaintiff received a letter from Defendant's counsel advising that the parties were in a direct dialogue, without counsel, in an attempt to resolve all matters in the case, and requesting that the August 6 conference with the Court be postponed so that the parties would have until August 16, 2010 (the date a hearing on Plaintiff's motion for injunctive relief relating to

a threatened eviction from the family home had been scheduled) to reach a comprehensive agreement.

\* \* \*

12. In addition to the fact that the terms laid out in the proposed Judgment are unfair and unconscionable to Plaintiff, the purported settlement is largely an attempt to deprive T & R of payment for Plaintiff's attorney's fees and costs. As detailed above, this Court has already determined that proper claims for attorney's fees and costs exist relating to both the child custody and support issues, and litigating the validity and interpretation of the Agreement, which represent substantial portions of the total fees. Moreover, under the terms of the proposed Judgment, Plaintiff, who has an independent obligation to pay T & R for fees incurred on her behalf, will not have assets, effectively becoming judgment proof. Endorsement of the proposed Judgment of Divorce would work significant harm and prejudice upon T & R's rights, and civil conspiracy.

\* \* \*

16. This Court is exercising its jurisdiction over a divorce proceeding with respect to which it "has all the powers of a court of equity." Code, Family Law Art., §§ 1–201(a)(4), 1–203(a). Equity regards and treats as done that which ought to be done, parties seeking relief in equity, and equity is concerned with substance not mere form. *Peninsula Methodist Homes & Hosps., Inc. v. Cropper*, 256 Md. 728, 735–36, 261 A.2d 787 (1970); *Merryman v. Bremmer*, 250 Md. 1, 11–12, 241 A.2d 558 (1968).

> It is a well established principle that courts of equity will not permit the forms of law to be made the instruments of injustice, but will interpose against parties attempting to avail themselves of the rigid rules of law for unfair purposes.

*Hyatt v. Romero*, 190 Md. 500, 505, 58 A.2d 899 (1948). *See generally Williams v. Williams*, 306 Md. 332, 341–42, 508 A.2d 985 (1986) (judicial power exists to void a separation agreement containing unjust and unfair terms, where con-

sideration is grossly inadequate and burdens on one spouse are oppressive).

\* \* \*

18. That the existing parties to this action are not protecting T & R's interests, and, indeed, are acting in concert to the detriment of those interests, is apparent. In any event, the movant's burden of showing that existing representation may be inadequate is a minimal one. *Citizens Coordinating Committee on Friendship Heights, Inc. v. TKU Assocs.*, 276 Md. 705, 714, 351 A.2d 133 (1976).

WHEREFORE, Tydings & Rosenberg LLP prays that its Motion to Intervene be granted, and that:

A. It be permitted to intervene as a Plaintiff in the captioned action;

B. This Court decline to endorse the proposed Judgment of Divorce;

C. This Court conduct further proceedings to ascertain the attorney's fees, and costs attributable to the work of Tydings & Rosenberg LLP on behalf of the Plaintiff in this action until such time as the Court granted the motion of Tydings & Rosenberg LLP to withdraw as Plaintiffs counsel, which would have been, and should be, awarded to Plaintiff and/or Tydings & Rosenberg LLP in this action;

D. This Court enter judgment in favor of Tydings & Rosenberg LLP, and against John Zorzit, in an amount to be determined after an evidentiary hearing, representing attorney's fees, and costs which would have been awarded to Plaintiff and/or Tydings & Rosenberg LLP in this action; and,

E. This Court enter such other and further relief as justice may require.

On August 20, 2010, the Circuit Court (1) denied Appellant's Motion to Intervene, and (2) entered a JUDGMENT OF ABSOLUTE DIVORCE AND FOR ANCILLARY RELIEF that included the following provisions:

The parties having reached a comprehensive settlement of all issues pending before the Court, as set forth below, the same appearing to the Court to be in the best interests of the parties' minor children, in the interests of justice, and consented to by the parties, it is therefore ordered this 20th day of August 2010 by the Circuit Court for Baltimore County hereby **ORDERED, ADJUDGED, and DECREED** that:

1.  The parties be, and they are hereby, **DIVORCED ABSOLUTELY.**

\*       \*       \*

12.  Each of the parties be and is hereby **DENIED ANY AND ALL OTHER RELIEF** available therein, **WITHOUT RESERVATION,** including without limitation, any relief available pursuant to the parties' Post–Nuptial Agreement (the validity of which was upheld by the Court in a ruling from the Bench on July 27, 2010 but which is expressly superseded by the provisions of this Judgment) any further or other use and possession of any real and/or personal property (except as addressed above (Para.10.a.)), any contribution to attorney's fees, etc., and all such rights are hereby deemed **RELEASED and/or WAIVED** by each party as against the other.

\*       \*       \*

14.  By agreement of the parties, excepting on Paras. 2 and 3 above, (custody and child support) each and all of the provisions of this Judgment shall be and are non-modifiable in any and all aspects.

The Circuit Court's signature appears between paragraph 14 and the following sentence:

**THIS JUDGMENT IS CONSENTED TO BY THE PARTIES, AS TO BOTH ITS FORM AND ITS CONTENT, AS A CONTRACT BETWEEN THEM AND AS AN ORDER OF COURT. EACH PARTY EXPRESSLY ACKNOWLEDGES HIS OR HER FULL AND COMPLETE UNDERSTANDING AND ACCEPTANCE OF ALL THE TERMS HEREOF.**

The signatures of Mr. and Mrs. Zorzit appear directly underneath this consent and acknowledgment. The following writings appear below those signatures:

> CC   *Julie Zorzit, pro se*
> *John Zorzit, Defendant*
> [Appellee's Counsel]

On August 24, 2010, Appellant noted a timely appeal to the Court of Special Appeals.

### Discussion

### I.

Professors Wright and Miller describe "intervention" as a "procedure by which an outsider with an interest in a lawsuit may come in as a party though the outsider has not been named as a party by the existing litigants." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1901, (3d ed. 2007) ("Wright & Miller"). In federal courts, an "outsider's" right to intervene is governed by Rule 24 of the Federal Rules of Civil Procedure, which, in pertinent part, provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

\*      \*      \*

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In Maryland circuit courts, an "outsider's" right to intervene is governed by Md. Rule 2–214, which, in pertinent part, provides:

Rule 2–214.   Intervention

(a) Of right.   Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property

or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

As Md. Rule 2–214 is modeled after FRCP 24, this Court has "pointed out that intervention decisions under [the federal rule] serve as a guide to interpreting the Maryland intervention rule." *Coalition For Open Doors et al. v. Annapolis Lodge No. 622, Benevolent and Protective Order of Elks,* 333 Md. 359, 368 n. 10, 635 A.2d 412, 416 n. 10 (1994). Professors Wright and Miller have stated:

It has been recognized that "interests in property are the most elementary type of right that Rule 24(a) is designed to protect." Thus, many of the cases in which a sufficient interest has been found under amended Rule 24(a)(2) have been cases in which there is a readily identifiable interest in land, or some other form of property, such as intellectual property or personal property. A sufficient interest also has been found when the intervenor claims an identifiable interest in funds that are the subject of the litigation.

Wright & Miller, *supra,* § 1908.1. (Footnotes omitted).

*Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52 (5th Cir.1970) was cited by Professors Wright and Miller for the proposition that legal fees earned by a law firm permit the firm to intervene on the ground that the earned fees provide the firm with "an identifiable interest in funds that are the subject of litigation." In that case, after signing a contingent fee agreement with a law firm that asserted a Jones Act claim on his behalf, the plaintiff "attempted to discharge his counsel and substituted another law firm as counsel." *Id.* at 54. After the United States District Court for the Eastern District of Louisiana dismissed the law firm's motion to intervene, that decision was reversed by the United States Court of Appeals for the Fifth Circuit, which stated:

We think it clear that the appellant law firm here claimed an interest in the subject of the action against [the defen-

dant], and is so situated that the final disposition of the action may as a practical matter impair or impede its ability to protect that interest. Neither of the existing parties is concerned with protecting the appellant's interest. . . .

\*     \*     \*

Appellee's brief suggests that the case having been dismissed by joint consent the intervention falls with it, there being no case open in which appellant can now intervene. There is, nevertheless, a res, the $14,150.83 held in the registry of the district court, which must be allocated as law and justice require between Gaines' former and present counsel. This seems to us sufficient.

*Id.* at 54.

In *United States v. Eilberg,* 89 F.R.D. 473 (E.D.Pa.1980), which is also cited by Professors Wright and Miller, the United States District Court for the Eastern District of Pennsylvania granted the motion to intervene filed by two former law partners of a defendant who had been sued by the federal government. In this case, the government was seeking the defendant's "distributive share" of a fee that had been paid to the law firm, while the intervenors asserted that "the share belongs to them rather than to the United States." *Id.* at 474. After finding that "the existing parties [to the federal litigation] clearly will not adequately represent the interests of [the defendant's former partners]," the Court noted that "the United States argues that [the defendant's former partners] have no interest in the property that is the subject of this suit, but only, at best, an interest in the contractual arrangement that existed among the firm partners." *Id.* While rejecting that argument, the Court stated:

But this argument elevates form over substance. The interest requirement of amended Rule 24(a)(2) is a practical guide designed to dispose of lawsuits "by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp,* 128 U.S.App. D.C. 172, 385 F.2d 694, 700 (D.C.Cir.1967). The rule does not require that the petitioner claim an interest in the property

that is the subject of the suit, but only an interest "relating to" that property. . . .

*Id.* at 474.

Traditionally, an award of counsel fees and/or suit money was considered "to be for the spouse and should be made to the spouse and not to the parties who perform services or to whom the spouse becomes indebted in connection with the litigation." 27B C.J.S. *Divorce* § 542 (2011) (citing cases). A Maryland circuit court, however, has statutory authority to award counsel fees directly to a party's lawyer. Section 7–107 of the Family Law Article [FL § 7–107], in pertinent part, provides:

§ 7–107. Award of reasonable and necessary expenses

(a) Definition.—In this section, "reasonable and necessary expense" includes:

(1) suit money;

(2) counsel fees; and

(3) costs.

(b) Award authorized.—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

(c) Considerations by court.—Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding.

(d) Lack of substantial justification and good cause.—Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party the reasonable and necessary expense of prosecuting or defending the proceeding.

(e) Reimbursement.-The court may award reimbursement for any reasonable and necessary expense that has previously been paid.

(f) Counsel fees.—As to any amount awarded for counsel fees, the court may:

(1) order that the amount awarded be paid directly to the lawyer; and

(2) enter judgment in favor of the lawyer.

In states with similar statutes, there is a split of authority as to ownership of the fees. Some cases hold that, because an award of attorneys fees is for the "benefit of the client rather than for the protection of the attorney, ... the attorney has no separate interest in [the fees] even where a statute provides that the court may order the payment of fees directly to the attorney." 27B C.J.S. *Divorce* § 542 (2011). In California, a discharged attorney is entitled "to pursue a request for direct fee payment from the former client's spouse if the request is expressly or impliedly authorized by the former client." *In re Marriage of Erickson & Simpson,* 141 Cal. App.4th 707, 46 Cal.Rptr.3d 253 (2006).

We agree with the jurisdictions holding that statutes similar to FL § 7–107 "clearly provide[ ] that an attorney may enforce an order requiring a party to pay a reasonable amount for attorneys' fees and costs in his own name." *Knott v. Knott,* 395 So.2d 1196, 1198 (Fla.Dist.Ct.App.3d Dist.1981). In *Knott,* the Circuit Court for Dade County ordered that the former husband pay the former wife's attorney's fees, and the former husband argued for reversal of that order on the ground "that the trial court lacked jurisdiction to enter the award following the parties' reconciliation and voluntary dismissal of the action." *Id.* at 1197. In affirming the judgment of the Circuit Court, the Court of Appeal of Florida, Third District, stated:

The husband contends that the voluntary dismissal filed by the parties upon their reconciliation deprived the trial court of jurisdiction to enter the order awarding attorneys' fees and costs. In addition, he argues that [the] attorneys[ ] lacked standing to seek attorneys' fees or to cross-appeal.

The question of standing has been determined by the enactment of 61.16, Florida Statutes (1979) [which states:]

The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorneys' fees, suit money and the costs to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The statute clearly provides that an attorney may enforce an order requiring a party to pay a reasonable amount for attorneys' fees and costs in his own name. The authorities cited in appellant's brief preceded the enactment of section 61.16 in 1971 and are inapplicable. The attorneys have standing to enforce their claim.

The husband's argument that the trial court was deprived of jurisdiction by the voluntary dismissal fails to persuade us for several reasons.

\* \* \*

Where the parties to a divorce action become reconciled, the cause may be dismissed as to the divorce action and permitted to continue for allowance of attorneys' fees.

\* \* \*

... The attorneys retain the right to sue in an independent action on a contract with their client.... Indemnification, however, as a practical matter, may be the only way an attorney can obtain his fee.

We know of no principle of law by which a woman, who has a meritorious cause of action for divorce and employs an attorney to institute and prosecute such an action, can, after it has been instituted and carried on for some time, deprive him of his right to compensation for the services so rendered in that action by a reconciliation with her husband, followed by a resumption of cohabitation. It would seem that upon the clearest principles of common honestly, as well as law, that an attorney in such a

predicament ought to be compensated for the services rendered, and that the wife should be allowed suit money for that purpose.

*Hadlock v. Hadlock* [, 137 So.2d 873] at 874 (quoting *Kiddle v. Kiddle*, 90 Neb. 248, 133 N.W. 181 (1911))

For these reasons, we hold that the attorneys' right to enforce their claims for attorneys' fees in their own name survived the stipulation of dismissal filed by the parties.

395 So.2d 1196, 1197–1199. (Internal citations omitted).

In *Frankel v. Frankel*, 2 N.Y.3d 601, 781 N.Y.S.2d 59, 814 N.E.2d 37 (2004), while holding that the Appellate Division of the Supreme Court had erroneously concluded that the wife's "former counsel had no standing to pursue the adversary spouse within the matrimonial action," the Court of Appeals of New York stated:

In matrimonial litigation, counsel fee awards have helped reduce what would otherwise be a substantial advantage to the monied spouse. Pursuant to Domestic Relations Law § 237(a), a lawyer who represents a nonmonied spouse may seek attorneys' fees from the monied spouse in the divorce action. This appeal raises the question whether attorneys may do so after their clients have discharged them without cause. A divided Appellate Division said no. We disagree and reverse.

\*　　\*　　\*

In *O'Shea v. O'Shea* (93 N.Y.2d 187, 711 N.E.2d 193, 689 N.Y.S.2d 8 [1999] ), we considered whether a trial court had discretion to award fees under Domestic Relations Law § 237(a) for legal services rendered before and after the divorce action.... In concluding that courts could award counsel fees for services performed both before and after the divorce action itself, we looked not only to this textual change but also to the policy underlying fee shifting in the divorce context. This is a dramatic departure from the American rule that usually requires litigants to pay their own legal expenses. We explained that giving courts the power to order a spouse to pay the other's counsel fees "is

designed to redress the economic disparity between the monied spouse and the non-monied spouse" and ensure that "the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet" ( [*Id.*] at 190 [689 N.Y.S.2d 8, 711 N.E.2d 193] ).

That is true here. If lawyers terminated without cause lose their right to petition the court for a fee award from an adversary spouse, the less affluent spouse would suffer the consequences. The spouse with ready and ample funds would have a wide choice of counsel, and the financial wherewithal to maintain the litigation, while the nonmonied spouse would struggle to find a lawyer who might have to go unpaid. A matrimonial lawyer may be willing to carry a client on its accounts receivable books, but not as to accounts that will prove unreceivable. In this regard, the Legislature designed Domestic Relations Law § 237(a) to eliminate the disparity between the monied and the nonmonied spouse. The husband's interpretation would thwart the statutory intent.

\*     \*     \*

The husband argues that a rule allowing a wife's discharged attorney to proceed against him would impede settlements. We disagree. Allowing the application would enable a global settlement that takes into account property distribution and other equities that affect the outcome. Otherwise, the case would be "settled," leaving unadjudicated the amount of the attorney's rightfully earned fees and shifting the venue to a plenary proceeding—another lawsuit, with the unpleasant prospect of a judgment against the nonmonied spouse.

781 N.Y.S.2d 59, 814 N.E.2d at 37–39. (Footnotes omitted). We agree with and adopt that analysis.

Because the Circuit Court was authorized by FL § 7–107(f) to enter a judgment in favor of Appellant and against Appellee, Md. Rule 2–214(a)(2) provided Appellant with the right to intervene in the domestic relations proceeding involving Appellee and Appellant's former client. We shall therefore (1)

deny Appellee's motions to dismiss,[2] and (2) remand the case at bar with directions that the Circuit Court grant Appellant's Motion to Intervene and resolve the issues raised thereunder.

## II.

Although a remand is required in the case at bar, pursuant to Md. Rule 8–604(b), we shall affirm the severable part of the judgment by which Appellee and Appellant's former client were "**DIVORCED ABSOLUTELY.**" As to the other provisions in the judgment at issue, we hereby direct that—until the Circuit Court has resolved the merits of Appellant's claim for attorneys' fees and costs—each of the other provisions in that judgment shall have the force and effect of a *pendente lite* Order.

**APPELLEE'S MOTIONS TO DISMISS APPEAL DENIED; JUDGMENT AFFIRMED IN PART AND VACATED IN PART; PROVISION IN JUDGMENT GRANTING THE ZORZITS AN ABSOLUTE DIVORCE AFFIRMED; OTHER PROVISIONS IN THE JUDGMENT VACATED AS "FINAL" AND CONVERTED TO *PENDENTE LITE* ORDERS; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; APPELLEE TO PAY THE COSTS.**

---

2.  Appellee moved for dismissal on the ground that Appellant failed to comply with its obligation to file a transcript of all proceedings relevant to the appeal. Pursuant to Md. Rule 8–501(e), Appellee had the right to reproduce, as an appendix to his brief, whatever part of the record he believed to be material.