OPINION OF THE COURT
Jeffrey S. Sunshine, J.
Introduction and Background
On October 9, 2015, plaintiff husband moved by order to show cause (motion sequence No. 7) requesting the following relief: (1) granting the plaintiff interim counsel fees in the amount of $350,000; and (2) granting such other and further relief that is just and proper.[1]
Defendant’s counsel, Raoul Felder, Esq., filed an affirmation in opposition to plaintiff’s motion for counsel fees on October 23, 2015. Plaintiff’s counsel filed an affirmation in reply on October 28, 2015.
Subsequent to the filing of plaintiff’s order to show cause and reply affirmation, plaintiff’s counsel, Carolyn Byrne, Esq., *678 was substituted as the attorney of record in this matter by the plaintiff himself in a signed consent to change attorney, dated November 12, 2015.
This court previously issued an extensive 61-page written decision dated September 18, 2015 which more fully details the history of the litigation between the parties and specifically details much of the events for which counsel seeks fees in this matter.[2] The original counsel fees request portion of that application was denied without prejudice due to it being procedurally defective in that no affidavit of net worth or retainer agreement were attached to the motion papers (see 22 NYCRR 202.16; George v George, 192 AD2d 693 [2d Dept 1993]).
Standing to Bring Counsel Fee Application Post-Substitution
As a threshold issue, the court must determine whether plaintiff’s former counsel has standing to argue for interim counsel fees in this court, and if so, whether this court can grant fees for prior services rendered as well as future legal services the plaintiff will most likely incur.
The New York Court of Appeals addressed this precise issue in 2004 in the case of Frankel v Frankel (2 NY3d 601 [2004]). In Frankel, the husband filed for divorce in 1998, and Supreme Court granted it in 2001. The wife paid her attorney an initial retainer of $5,000, but the billings soon exceeded that amount. In June 1999, the Supreme Court awarded the wife’s attorney an interim fee of $2,500. Nearly two years later, after a 32-day custody trial, the court granted an additional interim counsel fee of $25,000. Eighteen days later, the wife discharged her attorney without cause. After taking into account the retainer and the two interim awards, the wife’s attorney claimed that she owed him considerably more and proceeded against the husband for that amount pursuant to Domestic Relations Law § 237 (a). The Supreme Court ruled that even though the wife’s attorney had been discharged, he could look to the husband for counsel fees. The court then ordered a hearing before a special referee to determine the appropriate award. On the husband’s appeal, the Appellate Division, Second Department, reversed, holding that “former counsel has no standing to pursue the adversary spouse within the matrimonial action” (309 AD2d 65, 69 [2d Dept 2003]).
The Court of Appeals disagreed and established the principle that the attorneys for the non-monied spouse could seek at *679 torney fees directly from the monied spouse in the divorce action, pursuant to statute, even after the attorneys were discharged by the non-monied spouse without cause. The Court of Appeals went on to hold:
“If lawyers terminated without cause lose their right to petition the court for a fee award from an adversary spouse, the less affluent spouse would suffer the consequences. The spouse with ready and ample funds would have a wide choice of counsel, and the financial wherewithal to maintain the litigation, while the nonmonied spouse would struggle to find a lawyer who might have to go unpaid. A matrimonial lawyer may be willing to carry a client on its accounts receivable books, but not as to accounts that will prove unreceivable. In this regard, the Legislature designed Domestic Relations Law § 237 (a) to eliminate the disparity between the monied and the nonmonied spouse. The husband’s interpretation would thwart the statutory intent.” (Frankel, 2 NY3d at 607.)
In the case at bar, although plaintiff relieved his attorney and substituted himself pro se, it is undisputed that Ms. Byrne had been the plaintiff’s attorney of record in this matter up to November 12, 2015 and that she was subsequently discharged without cause. Plaintiff annexed a current statement of net worth and invoices for counsel fees incurred in this matter from April 27, 2015 to September 20, 2015 showing $93,790.99 due and owing to counsel.
In light of the Court of Appeals decision in Frankel, this court shall decide Ms. Byrne’s application herein; however, any potential award shall be limited to past fees incurred up to and including November 12, 2015 because of her discharge. This court herein determines that any prospective fees would be more properly addressed in a separate application by any incoming counsel whose assessment of the amount of fees commensurate with their experience and the parties remaining issues would be more appropriate. In doing so, the court does not preclude an application in the proper form pursuant to Domestic Relations Law § 237 for an award of counsel fees pendente lite.
Counsel Fees
Plaintiff’s Argument
Plaintiff annexes to this application both the retainer agreement (exhibit B) and statement of net worth dated December *680 3, 2014 (exhibit A) as well as an updated statement of net worth dated October 1, 2015 (exhibit C). Plaintiff has also reattached bills (exhibit D) previously provided, along with updated bills to the present.[3]
In her affirmation plaintiff’s counsel states that as of September 11, 2015, the plaintiff was indebted to counsel in the total amount of $70,658.59. Plaintiffs counsel affirms that plaintiff paid an initial retainer of $12,000, made an additional payment of $3,000 and that pursuant to a prior agreement with defendant’s counsel dated January 29, 2015, plaintiff’s counsel received $75,000 on consent from defendant for legal fees. Pursuant to the retainer agreement dated October 23, 2014, former counsel’s hourly rate was $400.
Plaintiff, in his affidavit, states that he grossed $104,566 in 2014 and $111,650 in 2015 as of October 1, 2015, the date of the filing of this application. He indicates that he has been unsuccessful in his attempt to gain more clients and that the seizure of his computers[4] interfered with a new assignment he had received.
Plaintiff’s counsel affirms that appearances in court for this matter have been averaging approximately 6 hours, totaling $2,400 in counsel fees per appearance. Counsel renews her counsel fee request of $350,000.
Counsel contends that as of the date of her motion, defendant’s counsel had admitted to being paid $427,982.02 for fees as of June 2015 (exhibit F) and asserts that the defendant “admitted to at least $900,000 paid by her mother” to defendant’s counsel’s Interest on Lawyer Account Fund on defendant’s behalf. Plaintiff’s former counsel also argues that defendant’s family appears to be paying for “her litigation costs, rent, child support, temporary maintenance, her share of the visitation supervisors” and other costs (exhibit G). Plaintiff’s counsel asks that based on the above and the disparity in income between the parties, that the court grant her request for counsel fees.
*681 In her reply affirmation, plaintiff’s former counsel reiterates that the plaintiff is entitled to an interim counsel fees award as the non-monied spouse, “irrespective of the allegations that have been made against him and against [her] personally.” She stresses that the defendant has “millions” of dollars at her disposal not including any wealth that may be attributed to her family and that the plaintiff “does not have nearly the assets or earning potential that she has.” Counsel opposes the defendant’s argument that the plaintiff is a “lazy freeloader.” Plaintiff’s counsel stresses that her client has undertaken “consistent and thorough efforts to find as much work as possible.” In support she attaches plaintiff’s job search records and rejection letters from a previous affidavit dated May 2015 (exhibit C). Counsel also states that it would be “inappropriate” for her client to “invade his limited savings at this time,” given the vast discrepancy in wealth between the parties.[5]
Defendant’s Argument
Defendant’s counsel argues that the defendant “cannot be responsible for plaintiff’s ‘non-marital’ legal services incurred in a marital action” as those are, he argues, beyond the scope of Domestic Relations Law § 237. He contends that plaintiff’s alleged illegal use of spyware, interception of defendant’s confidential communications and information and the ensuing litigation are not contemplated or covered under Domestic Relations Law § 237.[6] Counsel argues that plaintiff’s counsel is seeking counsel fees for work, in part, in defending the plaintiff from his alleged criminal conduct, in this matrimonial case, conduct that is not “matrimonial” in nature. Counsel contends that
“plaintiff’s illegal use of Spyware, including his interception of defendant’s confidential communications and information, and the ensuing tremendous amount of legal work that has been caused by not only his use of Spyware but his failure to disclose to his wife (or the Court) about his use of Pangu (used to (jailbreak’ his wife’s iPhone), Mspy [sic] (Implanted Spyware) and IPVanish (mechanism to his internet activity) — all used to effectuate plain *682 tiff’s illegal and certainly improper activities (paid for with marital funds) — and are all non-coverable under Domestic Relations Law § 237.”
Defendant’s counsel believes this is a case of first impression. He compares it to that of a case brought under different statutes, with the same facts, in both state and federal court. He believes that “the perpetrator in any Court, Federal or State, who seeks to slip-in under the disguise of Domestic Relations Law § 237, would never be able to receive counsel fees from his victim.” Defendant’s counsel argues that the court is therefore without authority to award any fees to plaintiff’s counsel in connection with the non-marital services rendered on plaintiff’s behalf. Additionally, counsel states that he is unable to “ascertain from the time already spent, how much time was spent on the ‘marital’ portion of the case, and how much time was spent on ‘non-marital’ efforts.” Defendant’s counsel indicates that he believes approximately 30.5 hours were dedicated by plaintiff’s counsel working on the “spyware” related motion alone, which he calculates totals $12,200 in counsel fees. He argues that the defendant should not be obligated to pay plaintiff’s counsel fees related to the plaintiff’s alleged use of spyware.
Defendant’s counsel also contends that plaintiff has engaged in non-meritorious conduct, advanced baseless arguments and has taken positions which resulted in a significant delay of the proceedings. Defendant’s counsel cites two incidents: an incident where plaintiff’s counsel brought an “emergency” application relating to visitation in which plaintiff and plaintiff’s counsel initially refused to accept defendant’s payment offer to referring the limited technological issue to a referee. Counsel argues that this motion is a “do-over,” and that because plaintiff’s counsel “continues not to follow the rules,” the defendant has been forced to incur fees and been harassed.
Defendant’s counsel states that the $350,000 figure “is nothing more than an unsubstantiated dollar figure for her fee apparently pulled out of thin air” and stresses that in her moving papers she seeks fees that would “allow us to go forward and conclude discovery in this case,” and is limited by law to past fees. He also argues that plaintiff’s counsel’s billing records are “not reliable or accurate” and that it would be “unfair” for the defendant to “take the hit” despite the lack of clarity as to her billing records. Defendant’s counsel notes his disagreement with 25 line items within plaintiff’s counsel’s billing records, *683 both alleged omissions and erroneous entries, and annexes these notes to his affirmation in opposition totaling $34,740 in disputed counsel fees.[7]
Defendant’s counsel also calls into question plaintiff’s attorney’s knowledge of certain facts of the case and the timing of that knowledge. He asserts that it would be “illuminating” to know at what point plaintiff’s counsel knew of her client’s alleged misdeeds and that “unfortunately, the way her billing records presently are, we cannot accurately determine what portion of her services was rendered before or after she knew of the facts.”
Counsel further argues that he has had to devote a great deal of billable time and effort as a direct result of plaintiff’s alleged “extraordinary electronic activities.” Defendant’s counsel states that the defendant and counsel had to “try to unravel what was done and hidden,” plaintiff’s counsel had to “basically advise her client to invoke the Fifth Amendment,” and therefore defendant should not be made to pay for plaintiff’s counsel fees.
Defendant’s counsel contends that the plaintiff is “financially able to pay for his legal fees.” He states that, other than a $15,000 payment to his own attorney, plaintiff has made no contribution to counsel fees in this matter while defendant has paid $75,000 pendente lite to plaintiff’s counsel, along with significant monies to her own counsel. He argues that plaintiff earns $111,650 per year, has $176,649 in a retirement account and received a total of $188,595.40 as a direct payment on February 2, 2015 (exhibit J) from the defendant, so he argues the plaintiff has sufficient monies to satisfy his counsel fee obligations without further contribution from the defendant.
Defendant’s counsel states that despite his recent success in generating income, the plaintiff “does not seem to seek employment in any serious way” and that in analyzing the plaintiff’s monthly employment search statement, “there is certainly no excuse for being underemployed.”
Additionally, defendant’s counsel states that along with the “illegal interception” of his client’s communications and information, the plaintiff has established a pattern of noncompliance with court orders and discovery demands to the defendant’s detriment.
*684 Lastly, defendant’s counsel argues that his client’s income is not so dissimilar from the plaintiff’s and that plaintiff’s parents’ wealth is not relevant to the underlying application.
Plaintiff’s Reply
In her reply affirmation “to the extent that there may have been omissions of e-mails, and even brief conferences or other entries that are not reflected in the bills, that is nearly always a product of [her] discretion, and not a reason to doubt the reliability of the bills themselves.” She argues that many if not all of the “omissions” cited by defendant’s counsel in his affirmation in opposition were minor, discretionary, and intentional as to “keep [her] billings as relatively low as [she has].”
To dispute defendant’s counsel’s allegations plaintiff’s counsel attached emails and other correspondence between counsel and other parties for which she did not charge her client. Plaintiff’s counsel argues that despite defendant’s counsel’s “distortions and misleading allegations” she “stand [s] behind these bills now just as [she] did when [she] filed the first motion.”
As to the fees requested, plaintiff’s counsel states that there is a “well-reasoned basis to conclude that another $280,000 in counsel fees will be expended prior to trial in addition to the $70,000 currently due, especially in light of their recent intention to move for a downward modification of support, and plaintiff would be unable to pay same.”
Discussion
An award of interim counsel fees is within the discretion of the court (DeCabrera v Cabrera-Rosete, 70 NY2d 879 [1987]). Pursuant to Domestic Relations Law § 237 (a), amended in 2010 (L 2010, ch 329, § 1, eff Oct. 12, 2010), the court in an action for divorce:
“may direct the person or persons maintaining the action, to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties. There shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court’s discretion, the court shall seek to assure that each party shall be adequately repre *685 sented and that where fees and expenses are to be awarded, they shall be awarded on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding.”
As to final counsel fee awards, it has long been established that “[a]n award of an attorney’s fee pursuant to Domestic Relations Law § 237 (a) is a matter within the sound discretion of the trial court, and the issue is controlled by the equities and circumstances of each particular case” (Grant v Grant, 71 AD3d 634, 634-635 [2d Dept 2010] [internal quotation marks omitted], quoting Gruppuso v Caridi, 66 AD3d 838, 839 [2d Dept 2009], quoting Morrissey v Morrissey, 259 AD2d 472, 473 [2d Dept 1999]).
“In determining whether to award such a fee, the court should ‘review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties’ positions’ ” (Gruppuso, 66 AD3d at 839, quoting DeCabrera, 70 NY2d at 881). “ ‘An appropriate award of attorney’s fees should take into account the parties’ ability to pay, the nature and extent of the services rendered, the complexity of the issues involved, and the reasonableness of the fees under all of the circumstances’ ” (DiBlasi v DiBlasi, 48 AD3d 403, 405 [2d Dept 2008], lv denied 10 NY3d 716 [2008], quoting Grumet v Grumet, 37 AD3d 534, 536 [2d Dept 2007]).
“The court may also consider whether either party has engaged in conduct or taken positions resulting in a delay of the proceedings or unnecessary litigation (see Ciampa v Ciampa, 47 AD3d [745, 748 (2d Dept 2008)]; Timpone v Timpone, 28 AD3d [646, 646 (2d Dept 2006)]; Morrissey v Morrissey, 259 AD2d [472, 473 (2d Dept 1999)]; Walker v Walker, 255 AD2d 375, 376 [(2d Dept) 1998]).” (Prichep v Prichep, 52 AD3d 61, 64-65 [2d Dept 2008].)
It is also well-settled that “[a]n award of interim counsel fees is designed to create parity in divorce litigation by preventing a monied spouse from wearing down a nonmonied spouse on the basis of sheer financial strength” (Rosenbaum v Rosenbaum, 55 AD3d 713, 714 [2d Dept 2008], citing O’Shea v O’Shea, 93 NY2d 187, 193 [1999]; Wald v Wald, 44 AD3d 848 [2d Dept 2007]). “Such awards are ‘designed to redress the economic disparity between the monied spouse and the non-monied spouse’ and ensure that ‘the matrimonial scales of justice are *686 not unbalanced by the weight of the wealthier litigant’s wallet’ ” (Kaplan v Kaplan, 28 AD3d 523, 523 [2d Dept 2006], quoting Frankel v Frankel, 2 NY3d 601, 607 [2004], quoting O’Shea, 93 NY2d at 190).
Interim counsel fees are awarded to level the playing field and “ ‘prevent the more affluent spouse from wearing down or financially punishing the opposition by recalcitrance, or by prolonging the litigation’ ” (Gober v Gober, 282 AD2d 392, 393 [1st Dept 2001], quoting O’Shea, 93 NY2d at 193; see also Prichep v Prichep, 52 AD3d 61, 65 [2d Dept 2008]). Thus, interim fees are generally warranted “where there is a significant disparity in the financial circumstances of the parties” (Prichep, 52 AD3d at 65; see also DelDuca v DelDuca, 304 AD2d 610, 611 [2d Dept 2003]; Celauro v Celauro, 257 AD2d 588, 589 [2d Dept 1999]).
“[U]nlike a final award of counsel fees, a detailed inquiry or evidentiary hearing is not required prior to the award of interim counsel fees” (Isaacs v Isaacs, 71 AD3d 951, 951 [2d Dept 2010]; see also Prichep, 52 AD3d at 65; Singer v Singer, 16 AD3d 666, 667 [2d Dept 2005]; Flach v Flach, 114 AD2d 929, 929 [2d Dept 1985]). Additionally, it should be noted that the Court in Prichep specifically provided that “[w]hen a party to a divorce action requests an interim award of counsel fees, as opposed to a final award, no such detailed inquiry is warranted” (52 AD3d 61, 65 [2d Dept 2008]).
The portion of plaintiff’s application for counsel fees relating to fees incurred prior to November 12, 2015 is the only portion of the application that the court will be addressing at this juncture. That branch of the application related to future counsel fees pendente lite is deemed moot as it relates to this particular attorney. Inasmuch as she is no longer the attorney of record any application for future fees would properly rest with an application by incoming or new counsel should the plaintiff seek to retain a new attorney.
The analysis herein must now turn to a determination of fees for outgoing counsel and this court must determine to what extent, inter alia, the underlying acts, if any, which resulted in the assertion of the invocation of the 5th Amendment have on a determination of an award of counsel fees. It is clear, that had this remained a pendente lite application for prospective fees the court would not require an evidentiary hearing on this issue of the merits of the underlying claim (that the acts of a party should preclude a fee) because the as *687 sertion of such claims by their nature would deny a litigant the right to defend or prosecute a matrimonial action when faced with a monied spouse with superior economic power.
Inasmuch as the fee for outgoing counsel is not based upon future services, the inquiry is more akin to that of a final counsel fees award which requires an evidentiary hearing. In the case at bar, plaintiff’s former counsel already received $75,000 voluntarily from defendant pendente lite and the final amount requested is not going to be utilized to defend or prosecute the action.
Certainly defendant’s claims to the accuracy of the billing would be subject to examination at a hearing. While given the present knowledge of this court, there is no basis to impugn the ethics or integrity of plaintiff’s former counsel as to a claim she had knowledge of the cloning of devices. To order a counsel fees evidentiary hearing now, which would be utilized at this juncture to address the issue of the alleged cloning and the assertion of the 5th Amendment protection, would entangle outgoing counsel in the merits of the matrimonial action and cause her to be part of what could be in effect a “trial within a trial” on the collateral issue of counsel fees for former counsel. The issue of the cloning and assertion of the 5th Amendment invocation are still in the discovery phase of litigation. The court does not agree with defendant’s assertion that Domestic Relations Law § 237 acts or should act as a blanket prohibition on recovery of counsel fees, where an individual acts in a manner contrary to the law. The court must in each case in awarding final counsel fees evaluate the totality of the circumstances and the merits of the actions taken in conjunction with the very important concept of who is the monied spouse.
This court is well aware of the dictates of the Court of Appeals decision in Frankel as well as the Second Department decision in Prichep. The facts in Prichep clearly dealt with a pendente lite award and Frankel established not only the principle that courts should not defer the issue of pendente lite fees to the trial court, but that an attorney has the right to maintain a separate claim for counsel fees without the need for a plenary action.
In Prichep the Second Department held that “[t]he trial court will be in the best position to determine whether the fees should be charged to the husband, or charged to the wife as an offset against the equitable distribution award she ultimately receives, or divided between the parties.” (Prichep v Prichep, *688 52 AD3d 61, 66 [2d Dept 2008].) Similarly, the First Department in Gober held “[i]n keeping with the nature of interim fee awards, the extent to which the latest such award is to be charged against plaintiff’s anticipated equitable distribution is entrusted to the sound discretion of Supreme Court.” (Gober v Gober, 282 AD2d 392, 393 [1st Dept 2001].)
Here, since the claim of the entitlement to a final fee is truly a trial issue and this particular fee in this case at this juncture is not for the purpose of equalizing the playing field pendente lite, the issue will be deferred to the trial court. Had plaintiff’s counsel remained as the attorney of record the outcome of this application may have very well been different pendente lite. The court would be loathe to deny counsel fees which could in effect deny the plaintiff proper representation and the “fault” arguments put forth by the defendant are far less persuasive at the pendente lite stage. The trial court, after hearing all of the evidence will be in the best position to assess what, if any, counsel fees should be paid by defendant. This is not to say plaintiff will not have to bear payment of some, if not all, of plaintiff’s counsel’s fees. The papers presented are devoid of any evidence that if the court were to award a fee now to plaintiff’s former counsel there would be assets in equitable distribution which could be distributed to defendant to reapportion that award.
Conclusion
Plaintiff’s motion (motion sequence No. 7) is held in abeyance and referred to an evidentiary hearing to be held after the conclusion of the trial in this matter and shall be limited to the issues as detailed herein.

. The court has previously appointed Hon. Ariel Belein as a referee for the purpose of reviewing the computing devices in the custody of the Sheriff of the City of New York pursuant to this court’s order dated May 15, 2015 and to prepare a report in compliance with the terms and directives of this court’s decision and order dated September 18, 2015.

. See Crocker C. v Anne R., 49 Misc 3d 1202(A), 2015 NY Slip Op 51365(U) (Sup Ct, Kings County 2015).

. Plaintiff’s counsel annexed the following bills to her motion: April 27, 2015: $12,500; May 1, 2015: $6,440; May 20, 2015: $6,200; June 12, 2015: $35,094.20; July 1, 2015: $17,502.60; August 31, 2015: $14,174.19; September 30, 2015: $1,880 for a total of $93,790.99.

. Plaintiff’s computers and iPhones were taken into custody of the court pursuant to an order dated May 15, 2015 and decision of this court dated September 18, 2015 (see Crocker C. v Anne R., 49 Misc 3d 1202[A], 2015 NY Slip Op 51365[U] [Sup Ct, Kings County 2015]).

. According to the plaintiff’s sworn statement of net worth dated December 3, 2014, the plaintiff lists $355,473 in savings. On his most recent statement of net worth dated October 1, 2015 he lists no savings.

. See Crocker C. v Anne R., 49 Misc 3d 1202(A), 2015 NY Slip Op 51365(U) (Sup Ct, Rings County 2015).

. These are either fees for which defendant’s counsel believes are “non-marital” in nature or missing completely from plaintiff’s counsel’s billing records.