OPINION OF THE COURT
 

 Rosenblatt, J.
 

 In making its award for counsel fees in this divorce action, the trial court included amounts for legal services that were rendered before the action was commenced, and for those rendered in connection with a counsel fee hearing. The question before us is whether the court had discretion to do so. We hold that it did.
 

 After having been married for over 25 years the parties sought to dissolve their marriage. Ultimately, they both hired attorneys. Efforts at settlement failed, and the wife commenced an action for divorce. Following pre-trial proceedings, a 12-day trial, and a hearing in connection with the amount of attorneys’ fees that the husband would have to pay to the wife, the court awarded the wife attorneys’ fees to cover her entire legal obligation, including fees for legal work done both before the commencement of the action and in connection with the counsel fee hearing.
 

 Citing
 
 Conklin v Conklin
 
 (196 App Div 607) the Appellate Division deleted the award for pre-action attorneys’ fees, and citing
 
 Schussler v Schussler
 
 (123 AD2d 618) it deleted the award for fees incurred in connection with the fee hearing. The
 
 *190
 
 Appellate Division sustained the balance of the award and modified the judgment accordingly.
 

 This appeal turns on our interpretation of Domestic Relations Law § 237 (a). The husband argues that the statute leaves no room for the counsel fee awards at issue. The wife contends that it does. We agree with the wife.
 

 Domestic Relations Law § 237 (a) reads:
 

 “(a) In any action or proceeding brought * * * for a divorce * * * the court may direct either spouse * * * to pay such sum or sums of money directly to ' the attorney of the other spouse to enable that spouse to carry on or defend the action or proceeding as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.”
 

 This enactment, which has deep statutory roots, is designed to redress the economic disparity between the monied spouse and the non-monied spouse. Recognizing that the financial strength of matrimonial litigants is often unequal — working most typically against the wife — the Legislature invested Trial Judges with the discretion to make the more affluent spouse pay for legal expenses
 
 [1]
 
 of the needier one. The courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant’s wallet.
 

 Domestic Relations Law § 237 (a) marks our present place in a long legislative and decisional law journey that carries us to our result.
 

 In 1872, this Court in
 
 Griffin v Griffin
 
 (47 NY 134) first took up the question of whether a husband may ever be compelled to pay the legal expenses of his wife, in the context of a matrimonial action between them. The Court identified an 1858 statute (referred to as “58 [2 R.S., 148]”) which provided that in every suit brought for a divorce or separation, “the court may, in its discretion, require the husband to pay any sums necessary to enable the wife to carry on the suit, during its pendency” (Rev Stat of NY, part II, ch VIII, tit I, art Fifth, § 58 [5th ed 1859]).
 
 [2]
 
 That statute, however, applied only when the
 
 *191
 
 wife, as a plaintiff, was alleging misconduct on her husband’s part, a situation not present in Griffin.
 
 [3]
 

 In 1876, the Legislature overhauled the body of laws relating to civil procedure, replacing the David Dudley Field Code of 1848 with the Code of Civil Procedure. In section 1769 of the Code of Civil Procedure the Legislature, obviously aware of the deficiencies of the statute as outlined in
 
 Griffin,
 
 authorized a court, in its discretion, to require “the husband to pay any sum or sums of money, necessary to enable the wife to carry on
 
 or defend
 
 the action” (emphasis added). Code of Civil Procedure § 1769, however, did not authorize an award of counsel fees for past expenses, so that if a wife had engaged counsel with her own or with borrowed money, she could not gain reimbursement from her husband, inasmuch as these expenditures were “already incurred”
 
 (Beadleston v Beadleston,
 
 103 NY 402, 405 [1886];
 
 McCarthy v McCarthy,
 
 137 NY 500, 503 [1893]).
 

 In 1920 the Legislature enacted the Civil Practice Act in place of the Code of Civil Procedure and imported the pertinent provisions of former Code of Civil Procedure § 1769 into Civil Practice Act § 1169, in almost verbatim language. Courts therefore continued to apply the statute as prohibiting any award of counsel fees for past expenses
 
 (e.g., Furman v Furman,
 
 18 AD2d 659;
 
 Nottingham v Nottingham,
 
 209 App Div 459, 461). Furthermore, even under Civil Practice Act § 1169 the wife was not entitled to counsel fees unless she showed a reasonable probability of success on the merits
 
 (see, Reiss v Reiss,
 
 18 AD2d 1105;
 
 Seltzer v Seltzer,
 
 16 AD2d 836).
 

 The Legislature addressed these concerns when it transferred the Civil Practice Act’s matrimonial law statutes to the Domestic Relations Law in 1962 (L 1962, ch 313;
 
 see also,
 
 Abstract of 6th Report of Senate Finance Comm, 1962 McKinney’s Session Laws of NY, at 3339; 4th Preliminary Report of Advisory Comm on Practice and Procedure, 1960 NY Legis Doc No. 20, at 362-363). It removed the restrictive provisions of Civil Practice Act § 1169, enacting in its place Domestic Relations Law § 237, to allow compensation for past legal services
 
 (see,
 
 Report of Joint Legis Comm on Matrimonial & Family Laws, 1961 NY Legis Doc No. 19, at 80-81). The courts have since authorized awards
 
 *192
 
 accordingly
 
 (see, e.g., Gleckman v Kaplan,
 
 215 AD2d 527;
 
 Ross v Ross
 
 47 AD2d 866).
 
 [4]
 

 When the Legislature lifted the ban against awarding fees for past legal services it acted on the expressed intent that counsel fee allowances be accorded greater flexibility and judicial discretion (Report of Joint Legis Comm on Matrimonial & Family Laws, 1963 NY Legis Doc No. 34, at 89).
 

 In transferring the counsel fee provisions from Civil Practice Act § 1169 to Domestic Relations Law § 237 (a) the Legislature also deleted the word “necessary” from the statute, removing any requirement or interpretation
 
 (see, e.g., Lake v Lake,
 
 194 NY 179) that the less affluent spouse be entirely spent down before being entitled to counsel fees. This advanced the objective that marital litigation is best shaped not by the power of the bankroll but by the power of the evidence. The enactment broadened the discretion of the court, enabling Judges to award counsel fees as justice required, according to the respective circumstances of the parties. In applying Domestic Relations Law § 237, courts have also relieved the less affluent spouse of the need to show a likelihood of success as a strict predicate to a counsel fee award. The award is now measured by circumstances and discretion, irrespective of the outcome at trial
 
 (see, e.g., Cassese v Cassese,
 
 197 AD2d 605).
 

 Under former Civil Practice Act § 1169 the court was authorized to award counsel fees “during the pendency” of the action. This clause does not appear in Domestic Relations Law § 237. The deletion is critical and supports our conclusion that a court in its discretion may award counsel fees for services and expenses performed or incurred before the action began. The statute allows the court to do so at any time after the start of the action up through the entry of final judgment. Our interpretation is based on the Legislature’s obvious and purposeful omission of the phrase “during the pendency,” in support of its goal of expanding judicial discretion in allocating legal expenses.
 

 The husband asserts that the Appellate Division properly relied upon
 
 Conklin v Conklin
 
 (196 App Div 607,
 
 supra)
 
 in rejecting the award of attorneys’ fees for legal services
 
 *193
 
 performed before the start of the action.
 
 Conklin,
 
 however, was decided in 1921, pursuant to Code of Civil Procedure § 1769. That section, as we have seen, was supplanted first by Civil Practice Act § 1169 and then by the current Domestic Relations Law § 237. The Court in
 
 Conklin
 
 observed that “the Code of Civil Procedure limits the scope of the order to
 
 ‘during the
 
 pendency’ of the action, and it does not extend to a period antedating the bringing of the action”
 
 (Conklin v Conklin, supra,
 
 196 App Div, at 610 [emphasis added]). Plainly, when the Legislature enacted Domestic Relations Law § 237 it eliminated the very three words — “during the pendency” — on which
 
 Conklin
 
 so pointedly rested.
 

 The husband’s other criticism of the award is that it carries the potential for abuse, in the form of additional obligations on the more affluent spouse. The wife counters, compellingly we believe, that the prospect of such an award discourages recalcitrant or unreasonable conduct on both sides, and is tempered by the exercise of sound judicial discretion.
 

 Obviously, a rigid line is easier to administer than one that affords flexibility. But that observation would apply to countless instances in which rulings are the product of judicial discretion rather than mechanical application. Each case will be different, and Judges are skilled in making appropriate distinctions. We conclude that courts have the discretion, in appropriate cases, to grant such awards, based on criteria that include the circumstances of the parties and the reasonableness of their positions.
 

 Given the statutory background and the unswerving direction of the decisional law over the last century and a half, we further hold that the court had discretion to grant counsel fees to the wife for legal services in connection with the hearing to determine the amount of the fee award. This is not to say that awards for legal services for fee hearings should be routinely expected or freely granted any more than those for pre-action services. Again, it is a matter of discretion, to be exercised in appropriate cases, to further the objectives of litigational parity, and to prevent the more affluent spouse from wearing down or financially punishing the opposition by recalcitrance, or by prolonging the litigation
 
 (see, Wyser-Pratte v Wyser-Pratte,
 
 160 AD2d 290;
 
 see also,
 
 12 Scheinkman, New York Law of Domestic Relations § 19.5, at 140). This is in keeping with this Court’s holding in
 
 DeCabrera v Cabrera-Rosete
 
 (70 NY2d 879), that flexibility and judicial discretion are essential devices in adjusting financial disparities in litigation.
 
 *194
 
 Given these considerations we conclude that
 
 Schussler v Schussler
 
 (123 AD2d 618,
 
 supra),
 
 which itself rests on non-matrimonial cases, is too restrictive insofar as it eliminates, as a matter of law, the discretion that should be accorded to trial level Judges in authorizing allowances of this kind. .
 

 Because a party is entitled to resist the opponent’s fee application and has a right to a hearing
 
 (see, Price v Price,
 
 113 AD2d 299, 309,
 
 affd
 
 69 NY2d 8), a mere request for a hearing should not carry with it a label of intransigence. It is for the court to make such distinctions. Here Supreme Court acted as it did after concluding that the husband — the considerably more affluent spouse — was to blame for protracting the case.
 

 As the Appellate Division determined that the counsel fees at issue were precluded as a matter of law, the case should be remitted to that Court for its review of the fees awarded by Supreme Court. Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the case remitted to that Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order, insofar as appealed from, reversed, etc.
 

 [1]
 

 . The same holds true for related professional-type expenses (see, Domestic Relations Law § 237 [d]).
 

 [2]
 

 . New York has since amended its laws to render domestic relations statutes gender neutral (see, L 1980, ch 281).
 

 [3]
 

 . The Court ultimately awarded the wife attorneys’ fees in reliance on certain intrinsic, equitable judicial powers formerly vested in the Court of Chancery and in the earlier ecclesiastical court before that (see
 
 also, North v North, 1
 
 Barb Ch 241).
 

 [4]
 

 . The Legislature took another step toward assisting the financially disadvantaged spouse in 1983 (L 1983, ch 287) when it removed from Domestic Relations Law § 237 the provision by which courts could vacate pre-trial awards of counsel fees (see, Governor’s Approval Mem, 1983 McKinney’s Session Laws of NY, at 2758).