■ CARYN J. BLOCK, Respondent, v JEFFREY A. BLOCK, Appellant. [746 NYS2d 15] —Order, Supreme Court, New York County (Judith Gische, J.), entered on or about September 20, 2001, which, inter alia, directed defendant husband to pay plaintiff wife's attorneys $35,000 in unallocated interim counsel and expert fees, unanimously affirmed, without costs or disbursements. Order, same court and Justice, entered on or about December 11, 2001, which granted the wife's motion for,

inter alia, additional counsel fees to defend against the husband's appeal from the prior order, and directed the husband to pay the wife $15,000 in interim legal fees for said purpose, reversed, on the law, the facts and in the exercise of discretion, without costs or disbursements, and the motion denied.

In awarding unallocated interim counsel and expert fees in the amount of $35,000 to assist the wife in preparing for the forthcoming trial to determine the value of the fees due the husband, an attorney, for his representation of clients in personal injury cases, the IAS court properly took into consideration the relative financial circumstances of the parties (*see, Charpié v Charpié*, 271 AD2d 169) as well as the nature and extent of the issues to be litigated, as to which the court was uniquely positioned to assess.

The same, however, cannot be said with respect to the award of interim counsel fees in defending the appeal of the interim $35,000 award. There can be no dispute that a spouse, on a proper showing, is entitled under Domestic Relations Law § 237 to counsel fees for representation during the appellate process (*see, Anostario v Anostario*, 252 AD2d 895.) We find, however, no justification, either on the basis of need or fairness, for the award of $15,000 in interim fees to defend against the appeal of the earlier $35,000 award. The wife earns a substantial income, approximately $100,000 annually, receives $49,000 yearly in child support and expenses, has assets of $142,000, has previously been awarded $87,750 in legal fees, aside from the $35,000 awarded in the September 20, 2001 order under review, which we are affirming, as well as $31,081.43 in expert fees, and has already received $216,000 in equitable distribution to be supplemented by a further distribution after resolution of the valuation of the contingency fee cases. In the absence of financial hardship and any showing as to the estimated value and extent of the legal services contemplated, neither of which is demonstrated here, a trial court should not award interim attorneys' fees prospectively for an appeal. It is not, as the dissent suggests, the lack of "an exact breakdown" as to the "expected cost of the appeal" which we find troubling, but rather the total absence of any showing whatever as to the anticipated cost or value of the services contemplated in connection with the appeal. Surely, if counsel is able to estimate the cost of the appeal at $25,000 it is not asking too much to require him to make some showing as to the contemplated services justifying such an award.

Moreover, a trial court should strive to avoid the appearance

that it is punishing a litigant for pursuing his or her right to appeal. The fact that, in appealing from the award of $35,000 in interim counsel fees, the husband might be viewed as pursuing a "scorched earth" tactic, as charged by the wife, does not justify an award that serves, in effect, as a sanction for taking an appeal. Moreover, although that is not the case here since the husband perfected his appeal, courts should take pains to assure that an award of an additional fee to defend against an appeal of an award of a fee does not act as a deterrent to the review of the original award.

Finally, we are asked to affirm the award of a $15,000 fee, granted after a request for $25,000, for which no showing as to the extent of the services to be rendered or hours expended has been made. While an appellate court, concededly, has the authority, and is in a better position than a trial court, to assess the extent of the legal services and their reasonable value in connection with the appeal it has heard, all that we have before us is an 11-page respondent's brief in an appeal that was submitted, not argued. Small wonder that there is such widespread criticism of the high cost of matrimonial litigation. (*See, Charpié v Charpié, supra*, 271 AD2d at 170-171; *see also*, Robert S. Cohen and Pamela A. Sicher, Perspective, *Defusing the Matrimonial Minefield*, NYLJ Mar. 9, 1993, at 2, col 3; David B. Saxe, Perspective, *Reflections on Matrimonial Lawyers, Judges and Practice—Part I*, NYLJ, Jan. 8, 1993, at 2, col 3.)

On any future application for fees and on a proper showing, the IAS court may, of course, consider the reasonable services rendered herein as part of the continuum of services required in representing the wife.

With respect to the alarmist tone of the dissent, we would merely point out that we have left open the opportunity for the payment of counsel fees in the defense of this appeal and have set forth the standard for the award of a prospective fee in such a case. As we have noted, no showing was made here. We believe, moreover, that vacatur, not pruning, is the only appropriate response to an award of $15,000 granted solely on the following submission by plaintiff on the motion: "Plaintiff should be awarded $25,000 counsel fees to defend against defendant's appeal to the Appellate Division. She cannot possibly afford to fund that effort herself, and of course defendant knows it." Concur—Nardelli, J.P., Buckley and Sullivan, JJ.

Saxe and Gonzalez, JJ., dissent in part in a memorandum by Saxe, J., as follows: Although nominally taking issue solely with the fee awarded to pay for the *appeal* of the pendente lite counsel fee award, the majority today, in less than four full

pages, has begun an assault upon the developing case law intended to "make sure that marital litigation is shaped not by the power of the bankroll but by the power of the evidence" (Scheinkman, Practice Commentaries, McKinneys Cons Laws of NY, Book 14, Domestic Relations Law C237:1, at 6, citing *O'Shea v O'Shea*, 93 NY2d 187). Its decision encourages a resurrection of the law's previous approach, under which a less affluent wife in divorce proceedings typically found herself in a weaker bargaining position, unable to pay for legal representation at a level her wealthier spouse was able to obtain, and having to virtually impoverish herself before she could receive any relief from the court.

In *Charpié v Charpié* (271 AD2d 169), we had the opportunity to observe that even among the affluent, a large disparity between divorcing spouses' assets and earning power often results in an inequity in the context of divorce litigation by which "a spouse with substantially greater financial resources [may try to] use those resources against the less powerful spouse to obtain the outcome he desires" (*id.* at 172). We emphasized the warning of *O'Shea v O'Shea* (93 NY2d 187), that " '[t]he courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet' " (*id.*, quoting *O'Shea v O'Shea*, 93 NY2d 187, 190, *supra*). It was with this concern in mind that the Committee to Examine Lawyer Conduct in Matrimonial Actions recommended that "the better practice is for judges to award adequate *pendente lite* counsel fees early in the action, and to make appropriate adjustments when necessary" (Report, Committee to Examine Lawyer Conduct in Matrimonial Actions, May 4, 1993, at 37). Indeed, the intransigence of the problem of nonmonied spouses not being awarded sufficient interim counsel fees was addressed again in the 1996 report of the New York Judicial Committee on Women in the Courts, in which it was stated that the "common practice of routinely denying or deferring such applications [for interim fees] * * * does not seem to have improved in any significant degree" (Report, New York Judicial Committee on Women in the Courts, May 1996, at 20).

Here, appropriately, the majority does not take issue with the $35,000 interim counsel and expert fee award challenged by the defendant husband, despite the wife's annual income of $100,000, assets of $142,000, and distributive award of

$216,000.* Rather, although it acknowledges the right to an award of counsel fees for an appeal (*see*, Domestic Relations Law § 237; *Borakove v Borakove*, 116 AD2d 683), the majority asserts that "*[i]n the absence of financial hardship* and any showing as to the estimated value and extent of the legal services contemplated, neither of which is demonstrated here, a trial court should not award interim attorneys' fees prospectively for an appeal" (emphasis added).

As a practical matter, the experienced matrimonial trial judge, like this Court, has sufficient knowledge to assess with some accuracy the amount of time it should realistically take to handle an appeal such as this one. Therefore, the lack of information in an attorney's affidavit attesting to an exact breakdown of the expected cost of the appeal should not invalidate the fee application, particularly since such an assertion is necessarily an estimate of contemplated work. Indeed, while an application for interim counsel fees must be supported by an affidavit from counsel (22 NYCRR 202.16 [k] [3]), as a general rule such an affidavit does not and cannot contain a realistic breakdown of how the lawyer anticipates the contemplated litigation to proceed. It is the IAS judge who has the best objective understanding and appreciation of the case, including the extent of the record, the issues involved, and the approach to be expected of the appealing party, and we ought to give full deference to her evaluation of the situation.

In view of the limited value of a submission from the attorney applying for fees, that in effect guesses at the estimated extent of the legal services contemplated, the majority's ruling amounts to a pronouncement that the matrimonial court should not make a prospective interim fee award for an appeal in the absence of financial hardship. This runs counter to the developing rule intended to ensure a level playing field, and would propel the law back to the older rule of *Kann v Kann* (38 AD2d 545), by which courts were not permitted to award counsel fees wherever the spouse seeking the award possessed assets sufficient to pay those fees.

The majority also appears to take the position that the court's award of interim appellate counsel fees amounts to an improper sanction, by which the monied spouse was being

---

* The wife's receipt of child support, included in the majority's recitation of her finances, is immaterial, since it cannot be considered as income to her, as its purpose is to cover the husband's share of costs the wife incurs in taking care of the parties' children. Nor did prior interim counsel and expert fee awards enrich plaintiff. The majority also fails to mention the wife's liabilities of approximately $45,000.

punished for pursuing his right to appeal from the interim fee award. This view fails to recognize that by bonding an eminently reasonable pendente lite counsel fee award and taking an appeal, the monied spouse was demonstrating exactly how a substantially wealthier spouse can use his resources against the less powerful spouse to obtain leverage in the litigation.

In the vast majority of cases, this Court has rejected, with good reason, challenges to pendente lite fee awards. We have reiterated the well-established rule that the appropriate remedy lies in a prompt trial in which the facts may be examined (*see, e.g., Halperin v Halperin*, 234 AD2d 59). Therefore, the taking of an appeal to challenge a fee award which could be adjusted at the close of the case represents the type of unnecessary litigation that puts a nonmonied spouse who must pay for the costs of the appeal into a weaker bargaining position. To require the nonmonied spouse to use up a portion of her finite resources to defend against such an appeal, without awarding her fees to cover the additional cost arising from the appeal, further skews the playing field we are trying to level.

Here, defendant husband's income for 1999, the last year for which he produced tax returns, was nearly $1,000,000, while plaintiff wife now earns $110,000. While her distributive award combined with her net assets may leave her with the apparently substantial sum of approximately $300,000, those funds will only remain substantial if they are not consumed by the extraordinary expense of contested matrimonial litigation, particularly the type of repeated interlocutory appeals and motions we see here. This Court has previously noted that defendant had engaged in "obstructive tactics" (*see, Block v Block*, 258 AD2d 324, 326); importantly, we have already seen three prior appeals in this action (*see*, 245 AD2d 153; 258 AD2d 324; 277 AD2d 87). Clearly, interim appellate fees are no less necessary in this case than the interim counsel fees awarded for counsel's pretrial and trial work.

The majority misjudges the nature and quality of counsel's work by implying that his relatively short 11-page brief reflects that his efforts on the appeal were limited. The value of appellate work should not be judged solely on the basis of how many trees were felled to produce a brief. Indeed, appellate justices regularly exhort counsel to limit the size of their briefs, and we often note that it takes extra time, effort, and skill to streamline and shorten a brief; a well-researched and well-written 11-page brief, responsive to appellant's contentions, may require as much time and attention as a carelessly drafted 20-page

brief. Notably, the brief in question effectively responded to all the contentions raised in appellant's brief. In addition, beyond counsel's efforts on the brief, he was forced to expend additional time opposing defendant's applications to this Court for an interim stay and then for a stay pending appeal.

Finally, even assuming that a reasonable counsel fee for the present appeal may be less than the $15,000 awarded, this Court's reversal of the award and outright denial of the motion is an inappropriate response. Since it is undisputed that the agreed-upon hourly rate of plaintiff's well-respected counsel is $400, a reasonable number of hours for careful preparation of the brief, time spent on the stay motions, in addition to printing and clerical costs, could easily bring the cost of even this straightforward appeal to something close to the amount awarded. Any inequity is better addressed by an adjustment in the context of the final judgment, based upon counsel's affidavit attesting to the actual services rendered. It is unseemly and unnecessary to deprive defendant wife of the whole sum because a small fraction of it is perhaps unearned at this time.

Moreover, the majority fails to consider that its ruling is likely to lead matrimonial trial judges to conclude that they may not approximate and award prospective interim counsel fees for appeals (*but see, LeRoy v LeRoy*, 276 AD2d 442). The likely result is that judges will find it necessary to refer the issue of appellate counsel fees to special referees for fact finding, a process that consumes additional hours of court time and months of delay for hearings and the follow-up motions to confirm or disaffirm the referee's recommendations (*see,* CPLR 4403). This is exactly the type of ancillary, sideshow litigation that our court administrators have been trying to eliminate in matrimonial litigation (*see,* Silbermann, Outside Counsel, *An Assessment of the First Three Years of the "New" Matrimonial Practice Rules,* NYLJ, Dec. 30, 1996, at 1, col 1). Moreover, the additional cost of such a procedure would be far greater than any possible difference between the $15,000 awarded here and the amount actually needed to successfully perform the work.

In my view, the $15,000 awarded for interim appellate counsel fees should be affirmed. In any event, since the trial court has the authority to make adjustments in fee awards in the final judgment, the issue of whether defendant is entitled to recoup a portion of that payment may be addressed by the trial court in that context, when counsel will be able to submit exact information as to the extent and value of the appellate work performed.

