M.M. v D.M. (2018 NY Slip Op 02007)





M.M. v D.M.


2018 NY Slip Op 02007


Decided on March 22, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 22, 2018

Tom, J.P., Webber, Oing, Moulton, JJ.


302521/13 -589 6065

[*1] M.M., Plaintiff-Respondent-Appellant,
v
D.M., Defendant-Appellant-Respondent.


Friedman Kaplan Seiler & Adelman LLP, New York (Robert S. Smith of counsel), for appellant-respondent.
Dobrish Michaels Gross LLP, New York (Robert Z. Dobrish of counsel), for respondent-appellant.



Judgment, Supreme Court, New York County (Louis Crespo, Special Referee), entered August 31, 2017, to the extent appealed from as limited by the briefs, awarding plaintiff wife child support and maintenance, awarding defendant husband a credit of $1 million for his separate property interest in the marital residence, distributing the parties' non-business marital assets 60% to plaintiff and 40% to defendant, awarding plaintiff a share of defendant's business interests valued as of January 2015, awarding credits for various post-commencement expenses, and allocating 65% of plaintiff's counsel fees to defendant, unanimously modified, on the law and the facts, to award defendant a credit of $71,000 for his Lehman Brothers retirement account, to delete the decretal language adjudging defendant solely responsible for the children's private school tuition and direct instead that the parties share the children's private school tuition pro rata, to vacate the decretal language obligating defendant to contribute to the cost of a full-time nanny, and to remand for a determination of the credit owed defendant for documented moving expenses, documented post-commencement contributions to his 401(k) account and for a recalculation of defendant's child support obligation, and his child support arrears, treating plaintiff's durational maintenance as income, and otherwise affirmed, without costs. Appeals from order, same court and Justice, entered April 7, 2017, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff concedes that defendant's Lehman Brothers retirement account, valued at $71,000, is separate property and was erroneously distributed as a marital asset. Accordingly, defendant is entitled to a credit in that amount.
The Referee, who issued a 269-page decision determining the financial issues ancillary to the divorce after an 18-day trial, providently exercised his discretion in distributing the parties' non-business marital assets 60% to plaintiff and 40% to defendant. The decision shows that the Referee carefully considered the statutory factors in determining this disposition of marital property, including plaintiff's contributions to defendant's career, at the expense of her own career, and the parties' probable future financial circumstances, in particular, defendant's far greater earning potential and family wealth (see Domestic Relations Law [DRL] § 236[B][5][d][9], [14]; Murtha v Murtha, 264 AD2d 552 [1st Dept 1999], lv dismissed 95 NY2d 791 [2000]).
Contrary to plaintiff's contention, the trial evidence demonstrates that the $1 million that defendant received from his father toward the down payment on the marital residence was a gift structured as a "loan" to defendant alone, and was therefore defendant's separate property (see DRL § 236[B][1][d][1]). There was no repayment using marital funds; indeed, there was no expectation of repayment.
In connection with determining plaintiff's share of defendant's business interests, the [*2]Referee providently exercised his discretion in choosing as a valuation date January 2015, a date between the commencement of the action and the trial (see DRL § 236[B][4][b]), on the ground that at around that time defendant was forcibly hospitalized and diagnosed with temporal lobe epilepsy, and subsequently had very little involvement in his family's business. We decline to disturb the Referee's determination on the ground that the value of the business continued thereafter to rise "passively," i.e., through no efforts of defendant, since defendant had been actively involved in the business before he became ill (see generally McSparron v McSparron, 87 NY2d 275, 288 [1995]).
The Referee also providently exercised his discretion in using the pre-tax value of plaintiff's distributive share of defendant's business interests as an offset against an unrelated credit to defendant and adjusting plaintiff's share for taxes before distributing the remaining amount. The referee explained that the pre-tax value was used as an offset because defendant would retain possession of his business interests, while plaintiff's remaining distributive share was taxed because she would realize it as a tangible payment (see Coburn v Coburn, 300 AD2d 212, 213 [1st Dept 2002] ["The trial court has great flexibility in fashioning an equitable distribution of marital assets"]).
While the Referee found that defendant's post-commencement contributions to his 401(k) were separate property, on the record before us, it is not clear whether defendant was credited for his documented post-commencement contributions to that account. Accordingly, we remand the matter for a determination of the credit owed defendant for those contributions. Defendant's contention that a 5% average rate of return, stipulated to by the parties, should be applied to the 401(k) from the date of the marriage is without merit, since the parties stipulated to the value of his separate property portion of the account as of June 30, 2015.
With respect to calculating defendant's child support obligation, the Referee providently exercised his discretion in imputing income of $1.5 million to defendant. In addition to the testimony of plaintiff's medical expert that the temporal lobe epilepsy with which defendant was diagnosed would not prevent defendant from resuming his role as president of the family business, the Referee based his conclusion that defendant was capable of high-level employment on his own observations of defendant during the trial. He found that defendant had presented a more competent version of himself to the neutral forensic expert during the parties' custody trial, when it was to his advantage to do so. Upon review of the record, we see no reason to disturb the Referee's credibility findings, which are entitled to great deference. We note that defendant's demonstrated earning history is an additional basis for upholding the Referee's determination (see Matter of Culhane v Holt, 28 AD3d 251, 252 [1st Dept 2006]; Wesche v Wesche, 77 AD3d 921, 923 [2d Dept 2010]).
The Referee also providently exercised his discretion in raising the income cap to $650,000. He properly considered the lifestyle enjoyed by the children during the marriage, which included country club membership, theater and other entertainment, and luxury vacations (see Culhane, 28 AD3d at 252). Defendant failed to show any actual expenses in support of his contention that the child support award is higher than necessary to ensure that the children live an "appropriate lifestyle" (id.). However, we agree that the Referee "double counted" by imputing an additional $125,000 to defendant's income - representing his father's historical contribution to the children's private school tuition - and at the same time directing defendant to pay 100% of this add-on expense. Accordingly, we modify the order to direct that the parties share the cost of the children's private school tuition pro rata.
We also agree with defendant that the Referee erred in ordering him to contribute to the cost of a nanny, since plaintiff does not work, and the youngest child was 12 years old at the time of trial (see DRL § 240[1-b][c][4]).
We further agree with defendant that the Referee failed to credit defendant for his documented moving expenses.
Defendant's contention that $214,617 should have been imputed to plaintiff as income during the pendency of the action for the purposes of child support finds no support in the record. However, defendant is correct that durational maintenance payments should be counted as income to plaintiff for the purposes of calculating child support (see DRL § 240[1-b][b][5][iii]). [*3]Accordingly, we remand for a recalculation of defendant's child support obligation and child support arrears, after including durational maintenance payments as income to plaintiff.
Plaintiff now seeks maintenance and child support arrears retroactive to service of the summons and complaint. She does not deny that she raises this issue for the first time on appeal, having previously requested that any arrears be calculated retroactive to the date of her pendente lite application. Before she made that application, defendant was paying unallocated support monthly; after he unilaterally reduced the amount, plaintiff sought court intervention. Since plaintiff does not claim that her needs and the children's needs were not being met by defendant's voluntary payments, we decline to make defendant's support obligations retroactive to the period in which he was making them (see Matter of Tse v Van Der Ploeg, 266 AD2d 8 [1st Dept 1999]).
The Referee providently exercised his discretion in awarding plaintiff maintenance for six months or until she received her distributive share of the marital assets, on the ground that the cash flow from those assets would be sufficient to support her lifestyle without the need for additional maintenance from defendant. After a 15-year marriage in which she was primarily a homemaker, plaintiff surely would have been entitled to maintenance of a longer duration — if not for the equitable distribution to her of 60% of the non-business marital assets, which provided her with the means to be self-supporting. The Referee addressed at length the copious trial evidence of plaintiff's expenses, and carefully determined equitable distribution, child support, and maintenance in relation to one another so as to situate each party fairly with respect to the marital standard of living, and we see no basis for disturbing the determination as to the amount or duration of maintenance.
The Referee providently exercised his discretion in allocating 65% of plaintiff's counsel fees to defendant. The parties' accrued counsel fees exceeded $7,000,000, and were paid mostly out of their liquid marital assets, although defendant was earning a substantial salary until 2015. In view of the fact that plaintiff's access to funds is limited to her equitable distribution award, the Referee properly identified defendant as the "monied" spouse (see DRL § 237[a]; O'Shea v O'Shea, 93 NY2d 187, 190 [1999]). Further, the Referee properly took into account that, although both parties engaged in needless litigation, plaintiff's trial positions were on the whole more successful (see DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). We note that even after the award plaintiff remained responsible for more than $1 million in legal fees.
We have considered the parties' remaining arguments, including their contentions with respect to credits owed for various post-commencement expenses, and find them unavailing.
M-589 - M.M. v D.M.
Motion to change caption granted.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 22, 2018
DEPUTY CLERK