Matter of Siouffi v Siouffi (2020 NY Slip Op 05002)





Matter of Siouffi v Siouffi


2020 NY Slip Op 05002


Decided on September 17, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 17, 2020

527935

[*1]In the Matter of Samer Y. Siouffi, Appellant,
v
Beth A. Siouffi, Respondent. (Proceeding No. 1.) 

Calendar Date: August 19, 2020

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Pritzker, JJ.


Kirwin Law Firm PC, Syracuse (Terry J. Kirwin Jr. of counsel), for appellant.
Fischer, Bessette, Muldowney & McArdle, LLP, Malone (Matthew H. McArdle of counsel), for respondent.



Mulvey, J.
Appeals (1) from an order of the Family Court of Clinton County (Favreau, J.), entered May 30, 2018, which, among other things, dismissed petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 4, to modify a prior support obligation, (2) from an order of said court, entered October 10, 2018, which partially granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 4, to hold respondent in violation of a prior support obligation and (3) from an order of said court, entered February 25, 2019, which, in proceeding No. 2 pursuant to Family Ct Act article 4, awarded counsel fees to petitioner.
Samer Y. Siouffi (hereinafter the father) and Beth A. Siouffi (hereinafter the mother) were married in 2002 and are the parents of one child (born in 2003). In December 2014, the parties entered into a separation agreement which, among other things, imposed certain child support and spousal support obligations upon the father. A September 2015 addendum to that agreement modified the father's child support obligations. The separation agreement and addendum were incorporated, but not merged, into a December 2015 judgment of divorce.
In May 2017, the father commenced the first of these three proceedings seeking, among other things, a downward modification of his child support obligation due to a substantial and allegedly unforeseen reduction in his income. In August 2017, the mother commenced the second of these proceedings, alleging that the father failed to pay his full child support obligation, and requested the opportunity to apply for counsel fees at the conclusion of the matter. After a hearing addressing both petitions, the Support Magistrate dismissed the father's petition, finding that he failed to establish a change in circumstances warranting modification. In a separate order, the Support Magistrate partially granted the mother's petition, finding that the father had violated his child support obligation, but that such violation was not willful; as a result, the Support Magistrate directed that a judgment for a certain amount of child support be entered in the mother's favor.
Shortly thereafter, the mother commenced the third of these proceedings, seeking to hold the father in willful violation of the prior support obligation because he made only partial child support payments from August 2017 through March 2018. While the third petition was pending, the father filed objections to the Support Magistrate's orders on the first two petitions. In May 2018, Family Court denied the father's objections.
Following a hearing on the third petition, the Support Magistrate found that the father violated his prior support obligation, but that such violation was not willful, and awarded the mother a judgment for a certain amount of child support, as well as counsel fees. The father filed objections to that determination, which Family Court denied in October 2018. In December 2018, after having received supporting documentation, the Support Magistrate awarded the mother counsel fees on the second petition. In February 2019, Family Court denied the father's objections to that order. The father appeals from Family Court's May 2018 order dismissing his modification petition and finding him in violation of his child support obligations, the October 2018 order finding him in violation of his support obligations and awarding the mother a judgment and counsel fees, and the February 2019 order directing him to pay the mother's counsel fees.
Family Court did not err in dismissing the father's petition to modify his child support obligation. Pursuant to statute, a court may modify a child support order based on "a showing of a substantial change in circumstances" (Family Ct Act § 451 [3] [a]), the passage of three years since the order's entry or last modification, or a change in either party's gross income by 15% or more since the order's entry or last modification (see Family Ct Act § 451 [3] [b] [i]-[ii]). The last two bases may not be applied here, as the parties expressly opted out of those provisions in their validly executed separation agreement, as permitted by statute (see Family Ct Act § 451 [3] [b]). Thus, the father bore the burden of showing a substantial change in circumstances warranting a downward modification of his child support obligation (see Bishop v Bishop, 170 AD3d 642, 644 [2019]; Matter of Lindsay v Lindsay-Lewis, 156 AD3d 642, 642 [2017]).
"In determining whether there has been a substantial change in circumstances warranting modification of a parent's child support obligation, the court must consider several factors, including the increased needs of the child[], the increased cost of living insofar as it results in greater expenses for the child[], a loss of income or assets by a parent or a substantial improvement in the financial condition of a parent, and the current and prior lifestyles of the child[]" (Bishop v Bishop, 170 AD3d at 644 [internal quotation marks and citations omitted]). Although "[a] parent's loss of employment may constitute a substantial change in circumstances . . ., the proper amount of support is determined not by the parent's current economic situation, but by the parent's assets and earning capacity. Thus, a party seeking a downward modification of his or her child support obligation based upon a loss of employment has the burden of demonstrating that his or her employment was terminated through no fault of his or her own, and that he or she made diligent attempts to secure employment commensurate with his or her education, ability, and experience" (Pathak v Shukla, 164 AD3d 690, 691 [2018] [internal quotation marks, citations and brackets omitted]; accord Matter of Evans v White, 173 AD3d 864, 865 [2019]; see Matter of Fanizzi v Delforte-Fanizzi, 164 AD3d 1653, 1653 [2018]; Matter of Lindsay v Lindsay-Lewis, 156 AD3d at 642).
At the first hearing, the father testified that, at the time that the parties executed the separation agreement and addendum and the divorce judgment was entered, he was employed as a physician at Champlain Valley Physicians Hospital (hereinafter CVPH) in Clinton County with a base salary of $425,000, although his annual earnings for each of the prior two years were closer to $500,000. He testified that at some point — although he could not remember the date — a supervisory colleague advised him that his employment with CVPH would not last much longer. The father testified that he then started looking for another job. A letter dated January 1, 2017 contains a job offer from a medical group in Tampa, Florida, which the father did not accept because he received an offer in April 2017 from Pinnacle Health Care Systems, another Florida practice, that he felt was a better fit. He accepted the Pinnacle offer for an annual base salary of $250,000, rather than the earlier offer with an annual base salary of $275,000. The father testified that he never resigned from CVPH but was pressured to leave.
The colleague testified that the father was popular and respected at CVPH. Although the colleague acted in a supervisory capacity, she had no legal authority over the father and could not have terminated him. She testified that she became aware in mid to late January 2017 that the father's position at CVPH was "tenuous" and she strongly recommended that he begin looking for another job. She confirmed that, although she never pointedly told the father, she essentially wanted him to understand that he must either resign or be fired. According to the colleague, at a February 2017 meeting the father announced to her and a CVPH administrator that he was going to move and take a job in Florida; a follow-up letter from the colleague memorializing this meeting acknowledged that CVPH formally accepted the father's resignation. The colleague ultimately testified that the father was not terminated, and that he resigned from CVPH.
It is undisputed that the father experienced a change in employment that resulted in a substantial decrease in his income. The father testified that he was informed that his employment at CVPH would not continue much longer, and that he chose to find another job at a lower salary to avoid being fired and receiving a termination notation on his permanent record that could jeopardize his chance for future employment. Despite the pressure placed on the father to resign, which was verified by the colleague's testimony, the father's employment records evince that, ultimately, his departure from CVPH was a result of his resignation, not his termination. Additionally, the father's credibility was called into question by his testimony that he began searching for new employment after speaking to the colleague and he received his first offer from a Florida practice on January 1, 2017, whereas the colleague testified that she did not speak to the father until after that date. Regardless of how his employment at CVPH ceased, however, the father failed to meet his burden of demonstrating that it ended "through no fault of his own" (Pathak v Shukla, 164 AD3d at 691; see Matter of Lindsay v Lindsay-Lewis, 156 AD3d at 642-643; compare Matter of Fanizzi v Delforte-Fanizzi, 164 AD3d at 1654; Andre v Andre, 78 AD2d 974, 974 [1980]). Specifically, he provided no explanation for why his continued employment at CVPH, where he was popular and respected, became "tenuous" or why he was at risk of being terminated (see Matter of Rosalind EE. v William EE., 4 AD3d 629, 630 [2004], lv denied 3 NY3d 606 [2004]).
The father "also failed to produce adequate evidence of his job search" and further failed to "sufficiently prove that he made other efforts to procure equivalent . . . employment" (Pathak v Shukla, 164 AD3d at 691; see Matter of Lindsay v Lindsay-Lewis, 156 AD3d at 642-643; compare Matter of Fanizzi v Delforte-Fanizzi, 164 AD3d at 1654). He failed to explain or present any evidence as to why he could not earn a salary commensurate with his position at CVPH, nor did he detail any unsuccessful attempts at trying to obtain an equivalent position (see Matter of Lindsay v Lindsay-Lewis, 156 AD3d at 643; compare Matter of Ceballos v Castillo, 85 AD3d 1161, 1163 [2011]). His testimony in this regard included a bare statement that he looked for jobs "online and through recruiters," with no specifics as to which online sites or recruiting agencies, nor as to the geographic span of his search. The two offers he mentioned were both in Florida; it is unclear whether he limited his search to that locale and, if so, why. Furthermore, he declined an offer with a base salary that was $25,000 higher than his current position with Pinnacle, and his explanation consisted of a vague statement that he thought Pinnacle was a better fit. As the father failed to meet his burden, we cannot say that Family Court erred in denying his petition for a downward modification (see Matter of Christopher C. v Kimberly C., 177 AD3d 1129, 1130 [2019]).
Family Court did not err in awarding the mother counsel fees. The father correctly notes that the court found his failure to pay support nonwillful. However, although a finding of a willful violation of an order of support would have required the court to award counsel fees to the mother (see Family Ct Act § 438 [b]), courts have discretion to award counsel fees in any proceeding to enforce or modify a support order (see Family Ct Act § 438 [a]; O'Shea v O'Shea, 93 NY2d 187, 192 [1999]). Furthermore, the parties' separation agreement provides that the party who brings a successful action for breach of that agreement is entitled to reasonable counsel fees. The father does not attack the amount of counsel fees awarded nor allege that it was unreasonable. Thus, Family Court did not abuse its discretion in awarding the mother counsel fees associated with her successful petitions to enforce the support provisions of the separation agreement, as incorporated into the divorce judgment (see Matter of Roberts v Roberts, 176 AD3d 1226, 1228 [2019]; Matter of McCullough v Falardeau, 184 AD2d 989, 989 [1992]).
We have reviewed the parties' remaining contentions and conclude that they lack merit.
Egan Jr., J.P., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the orders are affirmed, without costs.