S.L. v D.E. (2024 NY Slip Op 50792(U))

[*1]

S.L. v D.E.

2024 NY Slip Op 50792(U)

Decided on June 26, 2024

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 26, 2024
Supreme Court, New York County

S.L., Plaintiff,

against
D.E., Defendant.

Index No. 320178/2024

Counsel for Plaintiff:
Lee Anav Chung White Kim Ruger and Richter, LLP
99 Madison Avenue, Floor 8
New York, New York 10016
By: Judith E. White, Esq. 
Counsel for Defendant:
Berkman Bottger Newman & Schein, LLP
666 Old Country Road, Suite 810
Garden City, New York 11530
By: Michael Daab, Esq.
Counsel for the Child: Law Office of Rosemary Rivieccio
299 Broadway, Suite 1700
New York, New York 10007
By: Rosemary Rivieccio, Esq.
Counsel for the Children:
LoPreto + Levy, LLP
565 Fifth Avenue, Floor 7
New York, New York 10017
By: Virginia LoPreto, Esq. 

Ariel D. Chesler, J.

The parties are currently engaged in a contested matrimonial action which was commenced by Summons with Notice. (NYSCEF Doc. No. 1) The parties' have three unemancipated children in-common, namely, O.E.; A.E.; Y.E. (collectively referred to hereinafter as "the Children").
BACKGROUND
Plaintiff, S.L., moved by Emergency Order to Show Cause on February 1, 2024, seeking multiple forms of interim relief and for this Court to enter an order awarding, inter alia, exclusive use and occupancy of the marital residence; an award of "primary residential custody" of the Children; an access schedule with a direction that Defendant's parenting time be supervised; interim final-decision making authority on decisions related to medical and psychotherapeutic care for the Children (and specifically educational decision-making over O.E.); appointing an attorney for the Children; directing Defendant to maintain the financial status quo through the continued payment of family expenses; and directing Defendant to pay Plaintiff's counsel fees. (NYSCEF Doc. Nos. 2, 19). This Court, ex parte, granted multiple points of interim relief, namely, Plaintiff's requests for exclusive use and occupancy, primary residential custody of the Children, and ordering Defendant's parenting time be supervised. (NYSCEF Doc. No. 19). This Court. sua sponte, granted further interim relief based upon the papers presented, specifically, directing that Defendant shall not interfere with A.E.'s therapy, awarding Plaintiff interim final decision-making authority for educational and mental health decisions of O.E., and awarding Plaintiff a Temporary Order of Protection on behalf of Plaintiff and the Children. (Id.; NYSCEF Doc. No. 20). Defendant opposes this application (NYSCEF Doc. Nos. 28, 29)
This Court appointed Virginia LoPreto, Esq. as attorney for the Children by Order dated February 14, 2024.[FN1]
(NYSCEF Doc. No. 55). This Court thereafter appointed, Rosemary [*2]Rivieccio, Esq., as a separate AFC for O.E. (NYSCEF Doc. No. 56).[FN2]

Defendant, D.E., cross-moved on March 7, 2024, under this motion sequence seeking an order, inter alia, modifying the Temporary Order of Protection to permit unsupervised parenting time between Defendant and the Children, awarding the parties "joint custody" over the Children, awarding Defendant "primary residency" of O.E., awarding Defendant overnight parenting time twice during the week and on alternating weekends, and awarding the parties' joint decision-making authority of the Children. Plaintiff opposes this cross-motion (NYSCEF Doc. Nos. 58, 59).
DISCUSSION
Much of the relief sought under this sequence was resolved by Orders of this Court as this litigation progressed.
Plaintiff's request for an AFC was mooted by the appointment of Ms. LoPreto and Ms. Rivieccio by Orders of this Court (NYSCEF Doc. Nos. 55, 56). Accordingly, Plaintiff's request for the appointment of an AFC is DENIED as moot.
The Court's grant of interim relief, which remains in full-force and effect (except to the extent otherwise agreed to by the parties), resolved Plaintiff's requests for exclusive use, primary residential custody of the parties' Children, for Defendant's parenting-time to be supervised, and the request for interim decision-making authority over O.E.'s mental healthcare and educational decisions. (NYSCEF Doc. No. 19) Thus, those branches of Plaintiff's Order to Show Cause are DENIED as moot.
Plaintiff's request for a direction to maintain the parties' financial status quo was based upon the argument, in sum and substance, that Defendant "regularly threatened to cut [Plaintiff] off if [Plaintiff] does anything [Defendant] does not agree with." (Pl. aff. at ¶¶68-69 [NYSCEF Doc. No. 4]). Likewise, the parties are currently subject to the "automatic orders" that became effective upon Plaintiff's service of Summons with Notice (See DRL § 236[B][2][b]; 22 NYCRR 202.16-a). These automatic orders, along with this Court's subsequent order dated February 6, 2024, which directed Defendant to reinstate internet and phone services at the marital home resolved much of Plaintiff's request for maintenance of the status quo. (NYSCEF Doc. No. 22) Indeed, Defendant admits, "I am and have been voluntarily maintain the status quo for our family." (Def. aff. at ¶ 77 [NYSCEF Doc. No. 28]). This admission is strong proof that Defendant is the monied spouse. To the extent that such orders do not resolve the request, that branch of the motion is deferred to trial.
The remaining points of relief, apart from Plaintiff's request for counsel fees (which is addressed below), are deferred to trial.
Thus, the only remaining issue to be resolved is Plaintiff's request for counsel fees.
I. Plaintiff's Request for Counsel Fees
Plaintiff argues in her application for fees that Defendant should be ordered to pay counsel fees as he is the monied spouse. Further, Plaintiff argues that Defendant's alleged substance abuse and abusive tactics forced Plaintiff's hand into filing the motion. (Pl. aff. at ¶¶ 70-74 [NYSCEF Doc. No. 4]).
To support the position that Defendant has been abusive, Plaintiff offers, inter alia, a domestic incident report from June of 2021 after a verbal dispute occurred in the marital home while the children were asleep. (Pl. Ex. D [NYSCEF Doc. No. 9]). In addition, she offers, inter alia: (1) a text message stating "aba is drunk and hitting us" (Pl. Ex. E. [NYSCEF Doc. No. 10]); (2) a picture of bruising (Pl. Ex. F [NYSCEF Doc. No. 11]); (3) a letter dated April 28, 2023 from Child Protective Services (CPS) advising that Defendant that CPS is investigating Defendant for alleged abuse and maltreatment (Pl. Ex. G [NYSCEF Doc. No. 12]); and (4) a police report from the New York Police Department indicating that a child abuse investigation had been completed with the alleged perpetrator being Defendant. Notably, the report indicated the offenses of abandonment of a child (Penal Law § 260.00) and endangering the welfare of a child (Penal Law § 260.10[1]) against Defendant were supported by the investigation (Pl. Ex. H [NYSCEF Doc. No. 13]).
Plaintiff argues further that Defendant is the monied spouse because plaintiff has limited educational and work experience. Further, she argues that Defendant has exerted almost absolute financial control over the parties' funds during the marriage allowing Plaintiff to "only with draw $1,000.00" from the parties' bank accounts and access to two credit cards. This financial control is further supported by Plaintiff's argument that Plaintiff did work for Defendant's business but was never on payroll for the bookkeeping services she performed. (Pl. aff. at ¶¶ 70-74 [NYSCEF Doc. No. 4).
Defendant opposes this request and argues "[s]imply put, I cannot afford to pay any amount to the Plaintiff's counsel; to be required to do so will render me unable to afford to continue to maintain the status quo for our family and would render me incapable of defending myself in the matrimonial action." (Def. aff. at ¶ 79 [NYSCEF Doc. No. 28]). He further asserts that his obligations to pay fees to the AFCs and for supervised visits further demonstrate he does not have the financial means to meet the counsel fees demand. (Id. at ¶¶ 80-82). In support, Defendant offers the retainer agreement for supervised visitation with Comprehensive Family Services which demonstrates a retainer payment of $13,650.00 and an hourly rate of $300.00. (Def. Ex. M [NYSCEF Doc. 42]). Nowhere in his papers does Defendant argue that he is not the monied spouse. Indeed, his papers in fact say the opposite as he avers the financial status quo is him paying for the family's expense (Def. aff. at ¶ 77 [NYSCEF Doc. No. 28]). Likewise, nowhere in Defendant's affirmation in opposition is there legal authority to support denying Plaintiff's request for fees. (Def. affm. [NYSCEF Doc. No. 29]).
In reply, Plaintiff argues, "[t]here is no question that [Defendant] is the monied spouse in this matter and without proper representation I will be forced into submission by him yet again." (Pl. aff. in reply at ¶ 50 [NYSCEF Doc. No. 58]). She further argues that this is just the beginning of the divorce action and absent an award of fees she will be unable to "protect" herself. (Id. at ¶ 52).
Domestic Relations Law section 237 subsection (a) provides, "[t]here shall be a rebuttal presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court's discretion, the court shall seek to assure that each party shall be adequately represented and that where fees and expenses are to be awarded, they shall be awarded on a timely basis, pendente lite, so as to enable adequate representation from commencement of the proceeding." Declining to award counsel fees here would pervert the plain meaning of section 237. Indeed, declining to award fees would surely disable Plaintiff from "adequate representation." Likewise, the statute's clear attention to awarding fees from "commencement of the proceeding" further [*3]supports Plaintiff's argument that these fees are needed because this litigation is just beginning, and many points of ancillary relief are unresolved. (See Pl. aff. at ¶ 72 [NYSCEF Doc. No. 4]).
Apart from the plain meaning of the statute, Defendant has offered no evidence, other than his own word, that he is not the monied spouse such that the presumption under DRL § 237(a) has not been lifted. The only proof gleaned from his papers is that he is the monied spouse. (See Def. aff. at ¶ 77 [NYSCEF Doc. No. 28]).
"There is a rebuttable presumption that interim counsel fees shall be awarded to the less monied spouse (see Domestic Relations Law § 237 [a]), and courts 'should normally exercise their discretion to grant such a request made by the nonmonied spouse, in the absence of good cause' to deny the request." (Pezzollo v Pezzollo, 173 AD3d 918, 919 [2d Dep't 2019] citing Prichep v Prichep, 52 AD3d 61, 62 [2d Dep't 2008]). Indeed, failing to award fees here would place Plaintiff on an unequal playing field given Defendant's superior financial status and his previous conduct in employing Plaintiff without placing her on payroll. (See e.g., Carlin v Carlin, 120 AD3d 734, 734 [2d Dep't 2014]). Here, there is no good cause, nor has Defendant presented any, to deny the fee application.
Indeed, equity itself demonstrates that counsel fees must be awarded. The specific circumstances before this Court include compelling allegations of domestic violence. These alleged actions involve accusations of physical abuse, threatening language, tracking of Plaintiff's movements, the use of cameras in the marital home, and threats to cut off Plaintiff financially. Defendant's alleged physical and financial abuse, which are supported by proofs offered by Plaintiff, indicates that his coercive control in the relationship reduced Plaintiff's ability to earn — specifically by making her work without pay — and by committing acts of violence against her. (See generally, Havell v Islam, 3301 A.D.2.d 339 [1st Dep't 2002]). Financial abuse of a spouse is domestic violence; even without a bruise the harm is still potent, and this Court must not turn a blind eye to such conduct. This would leave Plaintiff financially, and thus, legally helpless and would atrophy her ability to litigate and defend her rights.
[The] enactment [of DRL § 237], which has deep statutory roots, is designed to redress the economic disparity between the monied spouse and the non-monied spouse. Recognizing that the financial strength of matrimonial litigants is often unequalworking most typically against the wifethe Legislature invested Trial Judges with the discretion to make the more affluent spouse pay for legal expenses of the needier one. The courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet.
(O'Shea v. O'Shea, 93 NY2d 187, 190 [1999])
The O'Shea reasoning clearly supports the conclusion that this matrimonial court must ensure the "scales of justice are not unbalanced by the weight of the wealthier litigant's wallet" or his financial control. The apparent financial coercive control in this case must be given strong consideration as it relates to an award of counsel fees.[FN3]
Thus, this Court must act prevent the [*4]Defendant from crippling Plaintiff's ability to litigate this action and defend her rights.
Plaintiff's counsel submitted a retainer agreement and statement of client's rights and responsibilities to this court evincing a retainer fee in the amount of $20,000.00. (Pl. Ex. K [NYSCEF Doc. No. 16]). The language of the retainer further demonstrates that Plaintiff needs financial assistance to litigate this matter. Plaintiff's counsel did not even receive the full sum of $20,000.00 when the retainer was signed, and it explicitly states that Plaintiff had a forty-five (45) day window after her initial payment of $10,000.00 to produce another $10,000.00 to fully meet her retainer amount. Plaintiff's request in her moving papers is for a sum of $50,000.00. (NYSCEF Doc. No. 2-5). The Court finds such a sum to be appropriate in light of the skill and work performed by counsel. Specifically, this matter was commenced only months ago, and the parties are already on their third motion sequence.
Given the fact that this motion was filed one (1) day after commencement affords this Court with a sound basis to find that Plaintiff's inclusion of the retainer agreement and statements of clients rights substantially complies with the requirements under 22 NYCRR 202.16. Indeed, this Court finds, pursuant to 22 NYCRR 202.16(k), that any defects under the Rule are "waived for good cause shown." This Court finds good cause has been demonstrated because the application was made a day after commencement and because of the unique facts of financial coercive control in this family demonstrate good cause and substantial compliance necessary to award fees.
The amount of $50,000.00 is reasonable in light of the heavily litigated nature of this matter and the fact that the issues being dealt with are complex and nuanced — such nuance and complexity is evidenced by this Court's need to appoint separate AFCs given the complex needs of these parties' children alone. Accordingly, Plaintiff's request for counsel fees in the sum of $50,000.00 is GRANTED.
Dated: June 26, 2024
J.S.C.

Footnotes

Footnote 1:This Court's Order of Appointment was filed with the county clerk on March 8, 2024; however, the appointment was nunc pro tunc to February 2, 2024. (NYSCEF Doc. No. 55).

Footnote 2:Like the Court's Order appointing Ms. LoPreto, this Court's Order appointing Ms. Rivieccio was made nunc pro tunc to February 6, 2024. (NYSEF Doc. No. 56).

Footnote 3:Indeed, "[c]ourts have begun to recognize the non-physical aspects of domestic violence and to provide relief to survivors of coercive and controlling relationships just as if they had experienced physical injury. The same relief is due in cases of expressive and psychological aggression as in those of physical aggression because the impact can be just as severe. [. . .] As perpetrators microregulate their everyday behaviors, victims'/survivors' options, choices, and ability to decide for themselves diminish. These constraints on their agency and voice often contribute to a profound disempowerment, loss of self, and loss of confidence in victims/survivors." (Estate of Aisha R., 2023 NYLJ LEXIS 1389, *9-10 [Fam. Ct, Kings Cnty. June 5, 2023] [internal citations omitted][dicta]).